THOMAS L. KUESPERT *et al. v.* STATE OF INDIANA *et al.*

[No. 1-1077A234. Filed August 1, 1978. Rehearing denied September 12, 1978.
Transfer denied November 30, 1978.]

*Gregg & Susong*, of Lebanon, *Locke, Reynolds, Boyd, & Weisell*, of Indianapolis, for appellants.

*Theodore L. Sendak*, Attorney General of Indiana, *Terry G. Duga*, Deputy Attorney General, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Plaintiffs-appellants Thomas L. Kuespert, *et al.*, appeal from the trial court's granting the motion for involuntary dismissal of defendants-appellees State of Indiana, *et al.* (the State), and from the trial court's denial of the right of Kuespert, *et al.*, to bring this action as a class action.

## FACTS

On June 6, 1975 a class action was filed by 57 limited police employees of the Indiana State Police on behalf of themselves and all others who were similarly situated against the State of Indiana, the Governor, the State Police Board, the Superintendent of the State Police, the State Budget Agency, the Director of the State Budget Agency, and members of the Budget Committee. The 57 limited police employees were all radio and communications officers for the Indiana State Police. Communications officers, like enforcement officers, are sworn police officers, wear a uniform and a badge, stand roll call, cannot secure other employment without permission, must keep their commander advised of their

whereabouts, and are on 24-hour call. Unlike enforcement officers communications officers are not issued a firearm, and have no police authority, unless they are on duty either at their post or on special assignment. They may on occasion, however, be left in charge of a command post or have prisoners entrusted to their care.

From approximately 1958 to 1969 a limited police employee for the Indiana State Police received exactly the same salary as an enforcement officer of the same grade. From 1969 to the present that parity has not been maintained. Prior to 1961 the salaries for all State Police employees were fixed by the State Police Board with the approval of the Governor. Since 1961 the salaries for all State Police employees have been set in the following manner: First, the State Police Board would suggest to the Department of Administration a salary for each pay-grade in the State Police; next the Department of Administration would make salary recommendations to the Budget Agency for its approval.

In 1975 the legislature passed the following appropriation, as found in Acts, 1975, P.L. 343 § 2, p. 1844:

> "The above appropriation designated 'emergency service allowance' is for the express purpose of compensating all sworn state police officers for being on call twenty-four (24) hours per day every day of the year. This allowance will amount to eight hundred forty dollars ($840) per year for each officer, and is to be paid in twenty-six (26) equal installments. In addition, all officers shall be paid merit increases and cost of living adjustments approved for state employees."

Limited police officers were not given the $840 annual emergency allowance even though they are sworn police officers and are subject to 24-hour call.

The actionable allegations contained in each of the 11 rhetorical paragraphs of the complaint in this action are found in the appellants' brief of Kuespert, *et al.*, on pages 11-14, as follows:

> "Count I alleges:
>
>> 'That the defendants, the State Budget Agency, Edison L. Thuma, as Budget Director, and members of the Budget Committee, have engaged in ultra vires activity by approving, establishing, fixing and/or setting the salaries, wages and/or

compensation of plaintiffs in violation of Acts 1961, Ch. 123, Sec. 13, p. 247 as amended, (I.C. 4-12-1-13) and of Acts 1937 Ch. 184, Sec. 2, p. 895 (I.C. 4-12-2-2).'

Count II alleges:

'That defendants, the State Police Board of the Indiana State Police Department, its members and said State Police Department have failed to perform their duties by not prescribing or fixing the salaries and/or compensation of the plaintiffs as required by Acts 1945, Ch. 344, Sec. 1, p. 1622 and as amended, (I.C. 10-1-1-1) and Acts 1945, Ch. 344, Sec. 3, p. 1622 (I.C. 10-1-1-3).'

Count III alleges:

'That the defendant, Otis Bowen, Governor of the State of Indiana, has failed to properly and faithfully execute the laws of the State of Indiana in regards to salaries, wages and other compensation of plaintiffs by failing to perform the executive functions as contained in Acts 1961, Ch. 123, Sec. 13, p. 247 and as amended, (I.C. 4-12-1-13); Acts 1937, Ch. 194, Sec. 2, p. 895, (I.C. 4-12-2-2); Acts 1945, Ch. 344, Sec. 1, p. 1622 and as amended, (I.C. 10-1-1-1); and Acts 1945, Ch. 344, Sec. 3, p. 1622 (I.C. 10-1-1-3).'

Count IV alleges:

'That the defendants, the State Police Board of the Indiana State Police Department, its members, Robert DeBard as Superintendent of the State Police and said State Police Department have engaged in ultra vires activity or activities by doing one or more of the following:

  (a) Establishing ranks and grades and positions,
  (b) Setting standards of qualifications for said ranks and grades and positions, and/or
  (c) Formulating and adopting rules and regulations relative to, plaintiffs, in violation of the guidelines and reasonable standards established by the State Legislature in Acts 1945, Ch. 344, Sec. 2, p. 1622, and as amended (I.C. 10-1-1-2) and Acts 1945, Ch. 344, Sec. 3, P. 1622, (I.C. 10-1-1-3).'

Count V alleges:

'That the defendants, the Indiana Department of Administra-

tion, R. E. Sanders, as Commissioner of the Indiana Department of Administration, and Robert C. Roeder, as Director of the Personnel Division of the Indiana Department of Administration, have engaged in ultra vires activity by approving, establishing, fixing and/or setting the salaries, wages and/or compensation of plaintiffs in violation of Acts 1961, Ch. 269, Sec. 2, p. 610, (I.C. 4-13-1-12) and of Acts 1961, Ch. 269, Sec. 15, p. 610; Acts 1967, Ch. 279, Sec. 2, p. 887; 1971 P. L. 27, Sec. 1, p. 164 (I.C. 4-13-1-15).'

Count VI alleges:

'That the plaintiffs were in fact demoted by defendants effective July 1, 1969, and/or at divers other times thereafter. That said demotions were made in violation of Acts 1945, Ch. 344, Sec. 6, p. 1622, and as amended (I.C. 10-1-1-6).'

Count VII alleges:

'2. That defendants have denied plaintiffs' their rights as guaranteed by the Constitution of the State of Indiana by taking property from plaintiffs without due process of law and/or without just compensation.'

Count VIII alleges:

'2. That plaintiffs and defendants entered into various individual employment contracts of divers dates, whereby plaintiffs agreed to perform certain duties for defendants in return for payment of salary, wages, and/or compensation as prescribed by law.

3. That plaintiffs have performed all conditions of said contract required to be performed by them.

4. That defendants have breached their contracts by refusing to pay the consideration agreed upon.'

Count IX alleges:

'2. That the defendants have denied plaintiffs equal protection of the law as guaranteed by the Constitution of the United States of America.

3. That said denial was created by a category called "Limited Police Employee" and denying to these police employees and/or civilian employees the rights afforded the other police employees and/or civilian employees of the Department.'

Count X alleges:

'That the improper action alleged against defendants in Counts I through IX were done willfully in a wanton or oppressive manner and/or done with reckless disregard of the rights of plaintiffs, and exemplary damages were claimed.'

Count XI alleged and defendants admitted that defendants propose to grant an $840 annual pay increase to certain enforcement personnel while denying the increase to plaintiffs. The plaintiffs alleged and defendants denied the following allegations of Count XI:

'3. That defendants have taken away compensation of some of the plaintiffs by denying them personal use of assigned automobiles while allowing other enforcement personnel to continue using their assigned automobiles for personal use.

4. The defendants propose to and will remove or have removed, by new rules and regulations or other means, all new personnel now classified "limited police employees" from the police pension fund and participation in that program.

5. That defendants will continue to classify plaintiffs as "limited police employees" and deny them their rights and benefits as outlined in Paragraph I, II, III, IV, V, VI, VII, VIII and IX of this Complaint.

6. That defendants will demote and have demoted plaintiffs by reclassification of plaintiffs in a manner unauthorized by law.'" (Citations to transcript omitted)

On June 8, 1976 the State filed a motion for summary judgment. On July 14, 1976 the court granted the State's motion for summary judgment as to paragraphs III, V, VII, IX, and XI of the complaint of Kuespert, *et al.* Trial on the remaining counts was held on January 31, 1977.

At trial the State objected to any reference of this action as a class action on the grounds that it had not been previously certified as such by the court. The court sustained the State's objection and denied a motion of Kuespert, *et al.*, wherein they petitioned the court to hold a hearing at that time for the purpose of determining whether the class action was proper. The court reasoned that it was the responsibility of Kuespert, *et al.* to obtain certification from the court and not that of the court to initiate such procedures. The court also suggested that

Kuespert, *et al.*, would not be able to comply with the notice requirements of Ind. Rules of Procedure, Trial Rule 23, even if the court were to certify the action as a class action at that time, in that the court was not amenable to granting a continuance for such purpose.

After Kuespert, *et al.*, presented all their evidence the trial court granted the State's motion for involuntary dismissal, which was based upon Ind. Rules of Procedure, Trial Rule 41(B). Kuespert, *et al.*, appeal.

## ISSUES

The issues which have been presented to this court for review are as follows:

1.  Whether the trial court erred by denying the plaintiffs' request to proceed as a class action.

2.  Whether the State Budget Agency acted ultra vires.

3.  Whether the plaintiffs were demoted without statutory due process.

4.  Whether the State Budget Agency acted arbitrarily in setting salaries and in providing benefits for limited State Police officers.

5.  Whether the trial court erred by denying the plaintiffs' claim for additional compensation, pursuant to Acts, 1975, P.L. 343 § 2, p. 1844.

## DISCUSSION AND DECISION

### Issue One

Kuespert, *et al.*, contend that the trial court erred in denying the motion of Kuespert, *et al.*, to hold a hearing to determine the propriety of permitting this action to proceed as a class action and in denying the right of Kuespert, *et al.*, to continue this action as a class action. We agree.

Ind. Rules of Procedure, Trial Rule 23(C)(1) places the responsibility upon the court to hold a hearing, as soon after the commencement of a class action as is practicable, and to determine, in light of the standards set forth in TR. 23, whether such action should continue to be maintained as a class action.

In *Boehne v. Camelot Village Apartments* (1972), 154 Ind.App. 21, 288 N.E.2d 771, 779, this court explained the trial court's responsibility in these matters, as follows:

"We are of the further opinion that the trial court had flexibility under the procedures prescribed in Rule 23, which it failed to use prior to its dismissing of the first three Paragraphs of the second amended complaint. The trial court should have first conducted a hearing to determine if the Tenant-plaintiff could show a substantial possibility that she could prevail on the merits of her complaint. *In cases of this kind it is the burden and duty of the trial court to conduct a hearing at which the plaintiffs shall be required to show preliminarily proof to establish that a class action may successfully be maintained before the class action motion is decided.* Rule TR. 23(C)(1) . . . ." (Our emphasis)

The federal courts have interpreted Fed. Rules of Civ. Proc. 23(c)(1) in a similar manner. In *Rodriguez v. East Texas Motor Freight* (1974), 505 F.2d 40 at page 50, the U.S. Court of Appeals of the 5th Circuit stated:

". . . A class action may not be dismissed because the class representatives fail to ask for a ruling on the propriety of the class nature of the suit. That responsibility falls to the court. 'The court has an independent obligation to decide whether an action brought on a class basis is to be maintained even if neither of the parties moves for a ruling under subsection (c)(1)'. Wright & Miller, Federal Practice and Procedure, Civil § 1785 (1972)."

In *Harris v. Pan American World Airways, Inc.* (1977), 74 F.R.D. 24 at pages 35-37 the United States District Court for the Northern District of California explained Fed. Rules of Civ. Proc. 23(c)(1) as follows:

"The obligation to initiate and make a timely determination under this paragraph is a part of the management responsibility imposed on the District Court by Rule 23 and rests on the court, regardless of whether a motion for determination has been made by either party. See *Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 50 (5th Cir. 1974), *cert. granted*, 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814 (1976). In making the determination, the District Court has broad discretion and its decision will not be disturbed on appeal in the absence of a finding of abuse, provided the court has made findings which reflect the material facts and the reasons on which its decision is based. *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 (9th Cir. 1974); *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

\* \* \*

A motion for a determination under Rule 23(c)(1) whether the action may be maintained as a class action may be made by any party, or at the instance of the court. The Rule provides that the determination shall be made 'as soon as practicable after the commencement of an action.' The burden of establishing that the action may be maintained as a class action is on the class plaintiff. *Redhouse v. Quality Ford Sales Inc.*, 511 F.2d 230, 235 (10th Cir. 1975); *Poindexter v. Teubert*, 462 F.2d 1096 (4th Cir. 1972); see, also, *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969) (Goodbold, J. concurring); *Huff v. N. D. Cass Co.*, 485 F.2d 710, 712 (5th Cir. 1973); 3B J. Moore, Federal Practice ¶ 23.02-2.

Normally, when a (c)(1) motion is made, the court will have before it a complaint and motion papers containing a class description of some sort. Depending on how long the action has been pending and how vigorously it has been prosecuted, there will also be some product of discovery. Because Rule 23(c)(1) clearly contemplates early action by the court, however, discovery will not have been concluded and the factual record is therefore likely to be incomplete. As will be discussed below, the facts relevant to the class action determination and definition may largely be the same as those relevant to the merits of the action. Facts bearing on liability and relief will also tend to have a bearing on numerosity, commonality, typicality and adequacy of representation. See, *Huff v. N.D. Cass Co.*, 485 F.2d 710 (5th Cir. 1973); *Long v. Sapp*, 502 F.2d 34, 42 (5th Cir. 1974). Hence, in making the (c)(1) determination, the court should have in mind that the record bearing on class issues cannot be assumed to be complete.

For that reason alone, any determination that the action may be maintained on behalf of a particular class should be tentative and any order, as Rule 23(c)(1) provides, should be understood to be subject to change before decision on the merits. On the other hand, the court may of course defer a (c)(1) determination pending further discovery if it finds the record to be inadequate.

\* \* \*

Accordingly, a (c)(1) order determining that the action may be maintained as a class action is essentially a procedural order. It carries no implication respecting the merits of the case. Nor does it determine that the class on whose behalf the action may be maintained will be the class which would recover relief should relief be granted. Rule 23(c)(1) contemplates that it 'may be conditional

and may be altered or amended before the decision on the merits,' and Rule 23(c)(3) further explicates that it is '[t]he judgment [not any prior order] in an action maintained as a class action . . . [which] shall describe those whom the court finds to be members of the class.' . . ." (Original emphasis)

In the case at bar the trial court failed to hold a preliminary hearing to determine the propriety of maintaining this action as a class action. Also, the trial court failed to set forth findings which reflect the material facts and reasons on which its decision denying Kuespert, *et al.*, the right to proceed as a class was based.

An examination of the record which was presented to this court in this appeal reveals to us no reason why Kuespert, *et al.*, should not have been permitted to maintain this action as a class action. The class consisted of over 316 limited police officers, all of whom were affected by changes in the method of setting the amount of compensation for limited state police officers. The claims of the 57 representatives of the class were typical of the class as a whole, and the representative parties appear to have been willing and able to protect the interests of the class. A class action appears to be a superior method of resolving the legal and factual issues in the case at bar.

In that the trial court failed either to permit this action to be tried as a class action, or to make findings as to why it should not have been so tried, this cause must be remanded so that the procedural requirements of TR. 23 can be met.

### Issue Two

Kuespert, *et al.*, contend that the trial court erred when it ruled that, since 1961, the State Budget Agency, and not the State Police Board with the approval of the Governor, has had the authority to set the salaries for all employees of the Indiana State Police. We agree.

Kuespert, *et al.*, maintain that the legislature has vested the power to fix salaries for the Indiana State Police in the State Police Board and the Governor. IC 1971, 10-1-1-1 (Burns Supp. 1977) states in part:

". . . All personal property, supplies and equipment which may be needed from time to time by the department shall be purchased

by the state purchasing agent or his successor; all capital expenditures shall be made with the approval of the budget committee, and *the salaries and compensation of the several police employees and other employees shall be fixed by the board, with the approval of the governor.* [Acts 1945, ch. 344, § 1, p. 1622; 1973, P.L. 93, § 1, p. 548; 1975, P.L. 34, § 10, p. 155.] (Our emphasis)

It also states in IC 1971, 10-1-1-3 (Burns Code Ed.):

". . . For each such rank, grade and position so established, the superintendent shall set standards of qualifications, in conformity with the most approved plans and standards adopted in other states, dominions and provinces, and he shall fix the prerequisites of training, education and experience; *and the board shall, with the approval of the governor, prescribe the salaries to be paid.*" (Our emphasis)

Neither IC 10-1-1-1, *supra*, nor IC 10-1-1-3, *supra*, have been expressly revoked or modified in pertinent part. The State contends that, when the Budget Agency was created in 1961, the salary fixing powers of the State Police Board and the Governor, alluded to in IC 10-1-1-1, *supra*, and IC 10-1-1-3, *supra*, were impliedly revoked. As authority in support of their contention the State cites IC 1971, 4-12-1-13(b) (Burns Supp. 1977) which reads in part:

"(b) *Except as to* officers and employees of universities and colleges supported in whole or in part by state funds, the executive secretary of the governor, the administrative assistants to the governor, the elected officials, and *persons whose salaries or compensation are fixed by the governor pursuant to law, the annual compensation of all persons employed by agencies of the state shall be subject to the approval of the budget agency.* Except as otherwise provided by the State Personnel Law, IC 4-15-2[4-15-2-1 — 4-15-2-46], and the Administration Law of 1961, IC 4-13-1[4-13-1-1 — 4-13-1-15], the budget agency shall establish classifications and schedules for fixing compensation, salaries and wages of all classes and types of employees of any state agency or state agencies, and any and all other such classifications affecting compensation as the budget agency shall deem necessary or desirable. The classifications and schedules thus established shall be filed in the office of the budget agency. Requests by an appointing authority for salary and wage adjustments or personal service payments coming within such classifications and schedules shall become effective when approved by, and upon the terms of approval fixed by, the budget agency. (Our emphasis)

It is correct that, with few exceptions, the Budget Agency has been statutorily endowed with the power to fix salaries for all state agencies which have not been so excepted. However, IC 4-12-1-13(b), *supra*, clearly excepts persons whose salaries are fixed by the governor from the auspices of the budget agency's salary-fixing power. As we have pointed out above, the salaries of State Police employees are fixed by the combined effort of the State Police Board and the Governor, and such salary-fixing procedure has not been expressly revoked.

We hold, then, that, according to IC 10-1-1-1, *supra*, and IC 10-1-1-3, *supra*, the salaries for State Police employees must be fixed by the Governor. Therefore, the salary-fixing procedure for State Police employees qualifies as one of the exceptions enumerated in IC 4-12-1-13(b), *supra*, and the Budget Agency is without power to set salaries for State Police employees.

The State argues that since IC 4-12-1-13(b) was enacted at a later date than IC 10-1-1-1 and IC 10-1-1-3, that later statute impliedly repealed those earlier statutes. Repeal by implication is looked upon with disfavor by Indiana courts. Such repeal by implication occurs only if the statutes are so inconsistent that it must be assumed that the legislature did not intend for both to remain in force. See *Schnee v. State* (1970), 254 Ind. 661, 262 N.E.2d 186.

There exists no such inconsistency between the statutes under scrutiny in the case at bar. The statute which endows the Budget Agency with the power to fix and approve salaries for state agencies also contains certain enumerated exceptions, one of which, under a reasonable construction of IC 10-1-1-1 and IC 10-1-1-3, would be the salary-fixing procedures for the Indiana State Police. We, therefore, hold that the trial court erred in arriving at its conclusion of law that the State Budget Agency, and not the State Police Board with the approval of the Governor, is empowered with the responsibility of fixing salaries for the Indiana State Police. We hold that the trial court erred in granting the State's motion for involuntary dismissal. The judgment of the trial court must, therefore, be reversed for a new trial, so that the evidence of Kuespert, *et al.*, can be evaluated in accordance with the law as it is set forth in this opinion. A major question to be determined at the new

trial is whether the State Police Board, with the approval of the Governor, would have maintained the parity in compensation between regular enforcement officers and limited police officers, had its authority not been usurped by the Budget Agency.

### Issue Three

Kuespert, *et al.*, contend that the failure of the Budget Agency to maintain parity in the salaries of the enforcement officers and the limited police amounted to a demotion of the limited police without due process. We have carefully examined the record, and we are not convinced that parity in the compensation of enforcement officers and limited police officers is required. Therefore, we hold that the disparity in compensation which developed in 1969 did not amount to a demotion without due process for the limited police officers.

### Issue Four

Owing to our resolution of Issue Two, it is not necessary for us to discuss Issue Four.

### Issue Five

Kuespert, *et al.*, contend that the trial court erred in denying plaintiffs' claim for additional compensation pursuant to Acts, 1975, P.L. 343 § 2, p. 1844. We agree.

The only prerequisites contained in the act which must be met before the "emergency service allowance" can be paid to an employee of the State Police are: (1) the employee must be a sworn State Police officer and (2) the officer must be on 24-hour call. The evidence clearly shows that limited State Police officers meet both criteria. Therefore, we hold that the trial court erred in granting the State's motion for summary judgment on this matter.

Reversed and remanded with instructions that a new trial be granted and that further proceedings be held which are not inconsistent with this opinion.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 378 N.E.2d 888.