**CONAGRA, INC. d/b/a Graham Grain Company and Mike Dimmitt, Appellants–Defendants,**

v.

**Richard FARRINGTON and Robert Farrington, Appellees–Plaintiffs.**

**No. 84A01–9312–CV–386.**

Court of Appeals of Indiana, First District.

June 23, 1994.

Rehearing Denied Sept. 1, 1994.

---

William W. Drummy, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, Mark F. Enenbach, McGrath, North, Mullin & Kratz, Omaha, NE, for appellants.

David H. Pope, Carr, Tabb & Pope, Atlanta, GA, Hansford C. Mann, Bruce D. Aukerman, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for appellees.

BAKER, Judge.

Pursuant to Ind. Appellate Rule 4(A), appellant-defendant ConAgra, Inc. d/b/a Graham Grain Co. filed this interlocutory appeal challenging the trial court's certification of a class action represented by appellee-plaintiffs Richard Farrington and Robert Farrington. Defendant Mike Dimmitt did not appeal the class certification.

### FACTS

During January 1, 1988 to January 1, 1992, Robert sold wheat, soybeans, and corn to ConAgra at its Terre Haute grain elevator. Richard sold soybeans and corn to ConAgra. ConAgra, a Nebraska corporation, operated three other elevators in Indiana. Typically, farmers would deliver their grain to an elevator where ConAgra would remove a test sample in order to "grade" the load. The grading process involved two screens that separated the grain from the "foreign material" (FM). The particular grade of a load was partially based upon the FM content. If a load contained more than 1% FM, then ConAgra would deduct a percentage of the weight from the total load. Hence, the higher the FM, the lower the number of bushels ConAgra would pay the seller.[1] The price per bushel was a spot price for the particular day of delivery or a previously set contract price. ConAgra performed the grading outside the seller's view. After a load had been dumped into ConAgra's storage facility, ConAgra would give the seller a ticket indicating the grade and sale price of the load of grain.

The Farringtons claim that ConAgra miscalculated the grade of soybeans due to its use of larger screens than those mandated by the U.S. Department of Agriculture. The USDA required an 8/64 screen; whereas, ConAgra used a 10/64 screen. The Farringtons contend that the use of the larger screens resulted in a higher FM deduction for soybeans that reduced the number of bushels sold, and thus, resulted in a lower yield to the seller. The Farringtons maintain that the use of the larger screen was a policy that ConAgra management imposed at all four elevators. The Farringtons also claim that ConAgra arbitrarily added an additional .3% FM to every load of wheat and soybeans, which further reduced the yield to the seller.

The Farringtons filed suit alleging violations of Indiana Racketeer Influenced and

---

1. For example, if a 10,000 bushel load contained 10% FM, then 9% was deducted from the 10,000 bushels and the seller would be paid only for 9,100 bushels.

Corrupt Organizations statute (IND.CODE 35–45–6–2(3)), breach of contract, negligence, unjust enrichment, and fraud against ConAgra and Dimmitt, one of its employees. The Farringtons sought to convert their suit into a class action pursuant to Ind.Trial Rule 23, to include all sellers of soybeans and wheat to ConAgra during the four-year period. The Farringtons filed supporting affidavits by their expert, Dr. Charles R. Hurburgh and a former ConAgra employee, Phil Shimboff. During Shimboff's deposition, he asserted his Fifth Amendment privilege and refused to answer questions relating to his former employment. Dr. Hurburgh was deposed and stated that his opinion was based partially upon research materials generated independently from the instant litigation and on Shimboff's affidavit. Dr. Hurburgh refused to surrender the research materials, claiming that they were the property of the USDA. ConAgra sought to compel discovery from both Dr. Hurburgh and Shimboff, or in the alternative, to strike their affidavits.

After a hearing the trial court certified the class on October 14, 1993, and rejected ConAgra's motions to strike Shimboff's and Dr. Hurburgh's affidavits.

### DISCUSSION AND DECISION

■ ConAgra challenges the validity of the trial court's certification of the class. Reviewing a class certification order, we apply an abuse of discretion standard. *CSX Transp., Inc. v. Rabold* (1992), Ind.App., 593 N.E.2d 1277, 1278, *trans. denied.* If substantial evidence supports the trial court's exercise of discretion, then we will affirm its order. *Id.*

ConAgra first asserts that the class certification order is deficient because it fails to set forth findings supporting its decision. ConAgra wrongly deduces such a require-

ment from *Kuespert v. State* (1978), 177 Ind. App. 142, 378 N.E.2d 888. *Kuespert* does not exact findings from the trial court when it grants class certification. *Kuespert* held that when the evidence supports class certification but the trial court denies it, the court must enter findings explaining its denial. *Id.* 378 N.E.2d at 894. Because the trial court granted class certification here, *Kuespert* is inapposite.

ConAgra also alleges that the certification order is inadequate because it does not define the class or the issues certified for class treatment. ConAgra's argument lacks merit. Only one defined class was submitted to the trial court for certification:

> persons and entities (excluding all governmental entities, ConAgra and its subsidiaries and affiliated companies, and the directors, officers and employees of ConAgra and its subsidiaries and affiliated companies) who sold soybeans and wheat to ConAgra during the period January 1, 1988 to January 1, 1992, at ConAgra's facilities in Indiana, who had a foreign material dockage greater than one (1%) percent.

Record at 272. Without a doubt, the court certified this class. Also, five questions were alleged to be common to all the class members.[2] T.R. 23(D)(4) allows the trial court to certify a class action on particular issues. Because the trial court did not expressly exclude any of the five issues, it is reasonable to presume all five were certified.

Noting that all of the Farringtons' claims are based on fraud, ConAgra posits, citing federal court decisions, that fraud claims are inappropriate for class certification. Indiana clearly allows common law fraud to be maintained as a class action provided that the requisites of T.R. 23 are met. *See Skalbania v. Simmons* (1982), Ind.App., 443 N.E.2d

---

2. The five certified class questions are:
   (a) Whether ConAgra has engaged in a common pattern and scheme of acts and omissions in connection with its business transactions with class members;
   (b) Whether ConAgra defrauded and deceived class members in its business transactions with class members;
   (c) Whether class members relied on the fraudulent and deceptive acts and omissions of ConAgra in accepting the price of grain set by ConAgra;
   (d) Whether the price of grains purchased by ConAgra from class members was artificially deflated due to other wrongful acts and omissions by ConAgra;
   (e) Whether the class members have sustained damages, and if so, the proper measure thereof. Record at 273.

352, 359. Hence ConAgra's contentions to the contrary on all of the causes of action fail.

## I. T.R. 23(A)—Prerequisites

Next, ConAgra contends that the class did not meet the elements of Ind.T.R. 23(A)(2), (3), and (4). Failure to meet any one of the mandated prerequisites in T.R. 23(A) results in the denial of class status. *Perfect Circle Corp. v. Case* (1983), Ind.App., 444 N.E.2d 1211, 1213. We address each element separately.

### A. Commonality

ConAgra argues that T.R. 23(A)(2), which requires questions of law or fact to be common to the class, is not satisfied. *See Skalbania,* at 357. ConAgra argues that commonality is lacking because no common contractual arrangements unite the class. The complaint alleged that ConAgra committed the common acts of the use of the wrong screen to grade soybeans and the false reporting of the FM content in wheat and soybeans in every transaction, thereby affecting every class member. *See* Record at 276–77. ConAgra stresses the following differences between the class members: 1) that the contracts between each class member and ConAgra differed since some were express and others implied, 2) many ConAgra employees and four separate elevators were involved, 3) ConAgra purchased crops of varying quality and grades, and 4) different prices were paid.

ConAgra's argument ignores the appellate standard of review because it essentially asks us to reweigh the evidence. On appeal where the evidence is conflicting and an abuse of the trial court's discretion is alleged, we shall consider only the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. *Skalbania,* 443 N.E.2d at 356.

ConAgra misinterprets *Skalbania* as requiring the contracts and representations to be the same to all class members to meet the commonality element. The common acts in *Skalbania* were, in fact, the identical con-

tracts and misrepresentations, but *Skalbania* did not limit commonality as ConAgra suggests. *Skalbania* generally recognized that a class action based on fraud is proper where a group of persons were defrauded by the same *acts* of the defendant. *Id.* at 359. Furthermore, individual questions do not prevent a class action on the common questions. *Bank One Indianapolis, N.A. v. Norton* (1990), Ind.App., 557 N.E.2d 1038, 1042 (common question of whether trustee acted reasonably in administration of trust); *see CSX,* 593 N.E.2d at 1279 (question of whether railroad abandoned right of way was common to each landowner). Thus, we conclude that the allegations in the complaint sufficiently support the trial court's determination of commonality.

ConAgra aggressively assails the certification of the fifth issue, which actually is composed of two questions: 1) whether the class members have been injured, and 2) what may they recover.[3] The former question focuses upon injury while the latter concerns damages. The injury question is based upon the allegation that the fraudulent conduct deprived every seller of the fair value of his crop sold to ConAgra. Thus, the entire class will have sustained a common injury if it proves the fraudulent conduct.

The damages question, though, is a tougher one. As ConAgra points out, each class member's damage differed because their contracts, prices, and quality of their individual loads varied. It is true that when damages are not readily ascertainable for the class, class action treatment on the question of damages is improper. *Kellogg v. City of Gary* (1990), Ind., 562 N.E.2d 685, 710. Such is not the case here. Notwithstanding the variances among the class members' damages, the Farringtons have presented evidence that the same formula may be applied to all of the class members to determine their individual awards. *See* Record at 244–45. The evidence was sufficient to sustain the finding of commonality regarding the damages issue. We continue to review whether the remaining elements of T.R. 23 are established for the certified issues.

---

**3.** The specific language of the fifth issue is: Whether the class members have sustained dam- ages, and if so, the proper measure thereof. Record at 273.

## B. Typicality

ConAgra next contends that the Farringtons have not demonstrated that their claims are typical of the class claims. A class action is permitted only if the questions of law or fact are typical to the class. T.R. 23(A)(3); see CSX, 593 N.E.2d at 1278–79. In Indiana, "typical" as used in T.R. 23(A)(3) does not demand proof of the existence of identical claims, rather it requires only a showing that the class representatives' interests are not antagonistic or in conflict with the class as a whole. Arnold v. Dirrim (1979), Ind.App., 398 N.E.2d 426, 436. Typicality may be satisfied if the claims of the representatives and class members stem from a single event or are based on the same legal theory. Id. at 436–37.

Specifically, ConAgra claims that its statutes of limitations defenses against the Farringtons negate typicality. ConAgra's argument is not directed to all of the theories of recovery. ConAgra argues its statute of limitation defenses as to the negligence, RICO, and breach of contract claims defeat typicality.[4] In other words, ConAgra does not contend that the statute of limitations would bar all of the Farringtons' claims, but enough of them to interfere with the typicality requirement.

Typicality may be upset if the particular representatives' claims are barred by the statute of limitations. See Bank One, 557 N.E.2d at 1042. Indiana rejected an argument similar to ConAgra's in Bank One, holding that the possibility of unique defenses does not render a representative atypical if the defense is irrelevant to the certified class issue. Id.

In Bank One, the certified class issue involved an alleged breach of trust. The statute of limitations defense had not yet been adjudicated at the time of the interlocutory appeal. Noting the distinction between the question of breach and the question of ultimate liability, our court found that the statute of limitation defense was relevant only to the liability question. Id. at 1041. Therefore, although the class representative's claims might subsequently be time-barred when deciding the liability question, the representative was suitable to litigate the breach question for the class. Id.

Utilizing the Bank One analysis, we consider whether the defense is relevant to the certified class issues. With the exception of the damages issue, the other certified issues are allegations regarding ConAgra's fraudulent conduct and resulting injury. The statute of limitations defense is not relevant to those issues. Only when the non-damages issues are answered affirmatively will the question be considered whether the actionable conduct is barred by the limitation period. See id. We conclude that the Farringtons' allegations of ConAgra's fraudulent conduct perpetrated against every class member resulting in common injury established typicality. ConAgra has not shown that the Farringtons' claims are antagonistic or in conflict with the class on the non-damages issues.

With regard to the damages issue, the statute of limitations defense has not been adjudicated. Only after the trial court makes a determination on that defense will it be known whether the representatives' claims are atypical on the damages issue. Should the Farringtons' recovery be determined to be barred by the statute of limitations defense, the trial court is at liberty to decertify the damages issue or appoint adequate class representatives on that issue. See Bank One, 557 N.E.2d at 1042, n. 4. At this point, the Farringtons' claims have not been shown to be atypical; thus, certification was not an abuse of discretion.

## C. Adequate Representation

ConAgra also argues that the Farringtons have not shown that they will fairly and adequately represent the class interests as required by T.R. 23(A)(4). To determine whether adequate representation exists for a

---

4. The Farringtons filed the original complaint on October 2, 1992, seeking damages from January 1, 1988, to January 1, 1992. Negligence and RICO actions are both governed by a two-year statute of limitations. See IND.CODE 34–1–2–1. Breach of contract claims have a six-year statute of limitations for oral agreements and a four-year period for written contracts. The statute of limitations question is not presently before us to decide.

class, Indiana has adopted some of the considerations applied in federal class actions. The courts consider:

1) the qualifications, experience, and ability of the attorney to conduct the class litigation;

2) the likelihood of a collusive suit;

3) the typicality of the representatives' claims to the class, or in other words, whether the representatives have interests antagonistic to the class's interests; and,

4) the quality of representation, not the quantity.

*Bowen v. Sonnenburg* (1980), Ind.App., 411 N.E.2d 390, 401. Of these considerations, ConAgra attacks the typicality of the Farringtons claims in an attempt to defeat the adequate representation element. Because typicality has a dual role as a prerequisite for a class action pursuant to T.R. 23(A)(3) and also as one of the factors in T.R. 23(A)(4), the rule that a person whose claim is barred by the statute of limitations negates typicality also applies to preclude that person from being a class representative. *See Bank One,* 557 N.E.2d at 1040. However, just as a statute of limitations defense will not automatically disturb typicality, it will likewise not preclude one from acting as a class representative under the same circumstances. *Id.* at 1041. Since ConAgra makes the same arguments as rejected above, we need not reconsider them here. *See* discussion in *I. Typicality*. Typicality pertinent to T.R. 23(A)(4) was satisfied.

ConAgra additionally argues that because Richard did not sell wheat to ConAgra, he cannot adequately represent class members who did. This argument is meritless. When multiple representatives are present, it is unnecessary that all the representatives meet the adequate representation standard; as long as one of the representatives is adequate, the requirement will be met. 7A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 1765 (2d ed. 1986). Moreover, the same misconduct of arbitrarily adding .3% FM to soybeans also is alleged to have been perpetrated against wheat sellers. Thus, Richard's interest in proving the misconduct in soybean grading is not antagonistic to the interests of class members who sold wheat. ConAgra fails to show that Richard is not an adequate representative.

ConAgra also suggests that because both express and implied contracts with various terms were entered into by class members with ConAgra, that the lack of uniformity of the contracts interferes with the typicality requirement. We find that this factual difference does not render the representatives' claims antagonistic to the interests of the class.

ConAgra next refutes the quality of representation, by asserting the Farringtons lack sufficient knowledge or understanding of the class action. Frankly, we are surprised that ConAgra attacks this element, which is generally a concern between class members competing to be the class representative. We cannot fathom what legitimate interest ConAgra has in ensuring that the class is adequately represented to litigate against it. It appears, though, that ConAgra's allegations are standard fare by defendants seeking any means to dismantle a class action. Because adequate representation must be shown to certify a class action, we consider ConAgra's argument.

ConAgra lists several allegations that it contends support that the Farringtons do not have adequate knowledge of the class action. ConAgra merely invites us to reweigh the evidence, which is not our function. We review whether the trial court abused its discretion in finding that the Farringtons are adequate representations. The record shows that Richard learned of ConAgra's actions through the media and contacted counsel to investigate for him. During his deposition, he explained that because he was retired he was willing to act as a class representative. Robert also testified at his deposition that he understood his responsibilities as a class representative. Both representatives were personally familiar with ConAgra's operation and the customary transactions at the elevator. Notwithstanding ConAgra's allegations, a class representative need only be adequate, which does not necessarily equate with being the best. *See* 7A Wright, Miller and Kane, *supra* (not required to be the best representative). The record sufficiently supports the trial court's determination that the Farring-

tons have sufficient knowledge of the case to be adequate representatives.

## II. T.R. 23(B)(3)—Common Questions Predominate

ConAgra also contends the Farringtons failed to establish that the common questions will predominate over individual questions pursuant to T.R. 23(B)(3). ConAgra's argument centers upon the injury and damages issues.

T.R. 23(B)(3) provides:

An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

.    .    .    .    .

3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

.    .    .    .    .

Satisfaction of T.R. 23(B)(3) depends on whether the claims of the class members derive from a common nucleus of operative facts. *Arnold,* 398 N.E.2d at 436. Here, the essence of the class claims is whether ConAgra engaged in fraudulent conduct in wheat and soybean transactions. The facts surrounding the misconduct would be largely the same for all class members. *See Skalbania,* 443 N.E.2d at 359–61 (issue of identical misrepresentations to entire class sufficed to show common questions predominated). Hence this common nucleus of facts satisfied the predominance requirement.

ConAgra does not argue that injury was not common. Rather it argues that no evidence of injury was established—let alone injury common to the class; consequently, no damages were shown. In *I. Commonality,* we resolved that the injury and damages issues were common. Thus, we will review whether the common injury and damages issues satisfy the predominance element.

These two issues were addressed by ConAgra's expert, Gordon C. Rausser. Rausser's opinion was that no injury [and therefore no damages] occurred even if Con-

Agra wrongfully overstated FM content and used the wrong size of sieves. Again, ConAgra's argument seeks a reweighing of the evidence by the appellate tribunal, which we are not permitted to do. Rausser's opinion was not uncontroverted. The expert for the class, Dr. Hurburgh, opined that Dr. Rausser's analysis was faulty for several reasons; and additionally, Dr. Hurburgh presented a formula for computing damages from the injuries. Record at 244–45. Dr. Hurburgh's testimony is sufficient evidence supporting the trial court's finding that injury and damages were common to the class and were predominant.

## III. Affidavits

■ Lastly, ConAgra maintains that the class certification order is flawed because it is based upon two faulty affidavits. ConAgra complains that the trial court erred in refusing to strike two affidavits. A trial court has broad discretion in ruling on discovery issues, and we will interfere only where an abuse of discretion is apparent. *Lucas v. Dorsey Corp.* (1993), Ind.App., 609 N.E.2d 1191, 1195. Due to the fact-sensitive nature of discovery matters, a trial court's ruling is cloaked with a strong presumption of correctness on appeal. *Id.* at 1197.

■ In support of class certification, the Farringtons submitted the affidavit of Phil Shimboff, a former ConAgra employee, that described ConAgra's policy for grading he performed at two of ConAgra's elevators. When deposed, Shimboff invoked his Fifth Amendment privilege and refused to answer ConAgra's questions. ConAgra filed a motion to strike Shimboff's affidavit or alternatively to compel his testimony. The trial court declined to strike the affidavit because "the allegations of the plaintiffs' complaint should be taken as true and the court should not delve into the merits of the plaintiffs' claim beyond an analyses [sic] as to its basic legitimacy. *Eisen v. Carlisle & Jacqueline [Jacquelin]* (1974), 417 U.S. 156 [94 S.Ct. 2140, 40 L.Ed.2d 732]." Record at 519. The trial court did not rule on the motion to compel Shimboff's testimony. On appeal, ConAgra asserts that the motion to strike should have been granted.

Indiana Trial Rule 26(B)(1) provides that parties may obtain discovery of any matter not privileged which is relevant to the pending action. Shimboff refused to answer questions at his deposition claiming the privilege against self-incrimination. ConAgra argues that the information sought was not the subject of privilege. However, before considering whether the information was exempt from discovery by privilege, the trial court had to determine whether the information sought was relevant to the issue being tried. *Bishop v. Goins* (1992), Ind.App., 586 N.E.2d 905, 907. The trial court's ruling indicates that it did not find the information sought from Shimboff was relevant in deciding the appropriateness of class certification. We agree. ConAgra lists several questions that Shimboff refused to answer. *See* Appellant's Brief, at 38 (citing Record at 308–09 and 315–16). Those questions concerned his past employment, training, and the preparation of his affidavit, not its content. Record at 309–10, and 316. None of these questions are relevant as to whether the class should be certified. The trial court did not abuse its discretion by denying the motion to strike Shimboff's affidavit.

■ ConAgra also challenges the trial court's refusal to strike Dr. Hurburgh's affidavit. ConAgra contends that the affidavit should be struck because 1) Dr. Hurburgh relied on Shimboff's affidavit and 2) Dr. Hurburgh refused to produce research materials ConAgra requested. Because the denial to strike Shimboff's affidavit was upheld, we consider only the second contention regarding Dr. Hurburgh's affidavit.

ConAgra requested production of the research materials upon which Dr. Hurburgh relied in formulating his opinion. Specifically, ConAgra sought disclosure of Dr. Hurburgh's materials produced in his participation in an ongoing economic research project studying FM in grain for the USDA. The trial court refused to strike Dr. Hurburgh's affidavit because he sufficiently answered deposition questions for purposes of the class certification issue. During his lengthy deposition, Dr. Hurburgh thoroughly explained his opinion and the basis therefor. His revelation of the study information that his contract with the USDA allowed was sufficient at this stage of deciding class certification. *See* Record at 449–62. We cannot say that the trial court abused its discretion in denying the motion to strike Dr. Hurburgh's affidavit.

### IV. Conclusion

The trial court issued an adequate order certifying the class action satisfying the provisions of T.R. 23. The trial court did not err in refusing to strike Shimboff's and Dr. Hurburgh's affidavits. We remind the parties that we have not decided any of the merits of the class action nor the potential success of the arguments. We have only resolved whether sufficient evidence supports the decision to allow the suit to proceed as a class action. We have found no abuse in the trial court's discretion.

Judgment Affirmed.

ROBERTSON and STATON, JJ., concur.