LAKE COUNTY TRUST COMPANY, as Trustee for Trust Number 4216 d/b/a Williamsburg Manor; Williamsburg Manor Associates, a General Partnership; and Richard J. Klarcheck, Appellants–Counter–Defendants,

v.

Terry WINE and Sandra Wine, and Ronald Niebauer and Carol Niebauer, for Themselves and or all Other Residents of Williamsburg Manor Mobile Home Park, Appellees–Counterclaimants.

No. 64A03–9804–CV–174.

Court of Appeals of Indiana.

Dec. 23, 1998.

Greg A. Bouwer, Spangler, Jennings & Dougherty, P.C., Merrillville, for Appellants–Counter–Defendants.

Gordon A. Etzler, Kevin G. Kerr, Hoeppner, Wagner & Evans, Valparaiso, for Appellees–Counterclaimants.

## OPINION

ROBB, Judge.

### Case Summary

Appellants, Lake County Trust Company, Williamsburg Manor Associates, and Richard J. Klarcheck (hereinafter collectively referred to as "Williamsburg"), appeal the trial court's order denying their motion for summary judgment and denying their motion to decertify the underlying class action. We affirm in part and reverse in part.

### Issues

Williamsburg raises two issues for our review which we restate as:

I. Whether the trial court properly denied Williamsburg's motion for summary judgment on the Wines', the Niebauers', and the other tenants' four counterclaims; and,

II. Whether the trial court properly denied Williamsburg's motion to decertify the class action.

### Facts and Procedural History

Williamsburg owns Williamsburg Manor, a residential community that provides mobile home lots for lease. The tenants of the park had executed written leases with Williamsburg which provided that the tenancies were month to month. In November 1993, Williamsburg increased the rent for the lots from $221 to $236 per month, constituting a 7% increase. Many of the tenants vehemently protested the increase. Appellees, Terry and Sandra Wine ("the Wines"), Ronald and Carol Niebauer (" the Niebauers"), and other tenants of Williamsburg, paid their rent minus the increase; as a result, Williamsburg returned their checks with Notices to Quit. Several tenants were permitted to pay the required rent plus a late fee; however, the Niebauers and other "ringleaders" of the rent protest were not permitted to remain at Williamsburg under any circumstances. Williamsburg sued to evict the Niebauers, the Wines, and other tenants. The Wines' and the Niebauers' eviction suits were consolidated. The Wines and the Niebauers counterclaimed on behalf of themselves and the other tenants of Williamsburg for breach of contract, abuse of process, a violation of civil rights under 42 U.S.C. § 1983, and equity.[1] The trial court certified the action as a class action. Williamsburg moved for summary judgment on the Niebauer Class' counterclaims; additionally, Williamsburg moved the court to decertify the class action. The trial court denied both motions and certified the Interlocutory Order for appeal.

### Discussion and Decision [2]

#### I.

Williamsburg argues that the trial court erred when it denied its motion for summary judgment on the Niebauer Class' four counterclaims. We will address each counterclaim in turn.

 Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Once the movant has sustained this burden, the oppo-

---

1. For sake of clarity, the appellees will collectively be referred to as "the Niebauer Class."

2. The Niebauer Class complains that subsequent to the filing of its brief, appellants filed a supplemental record with this court. As the Niebauer Class was compelled to submit its brief citing to a working copy of a supplemental record which it intended to file, the Niebauer Class has requested this court to release the supplemental record for its review in order to correct citations in its brief, if necessary, and review the record for completeness. Upon review of the record and the Niebauer Class' brief, however, we were able to locate all of its references to the record. As all of the facts cited in the Niebauer Class' brief were located, a motion to release the supplemental record and any subsequent correction of citations would have no effect on the outcome of this appeal. Accordingly, the Niebauer Class' motion to release the supplemental record is denied.

nent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App. 1994), *reh'g denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

### A. Good Faith in Contract Law

Williamsburg argues that the trial court erred when it denied its motion for summary judgment on the Niebauer Class' claim that a duty of good faith and fair dealing was expressly incorporated into the Williamsburg lease. Section 13 of the Williamsburg lease states that "the posted rules and regulations ... attached to this lease are a part of this lease at the time of execution." (R. 525). The preamble to the rules and regulations states:

> Williamsburg Manor is conceived as a community of neighbors living in harmony ... not by rigid rules and regulations.... When these standards are fair, reasonable and logical ... when they are applied and complied with on an impartial basis ... each resident can be assured a maximum of freedom, privacy, safety and comfort.... [T]he spirit behind this statement is the Golden Rule: "Do unto others as you would have others do unto you."

(R. 527). The Niebauer Class argues that the language of the preamble to the rules and regulations imposes a duty of good faith which is expressly incorporated into the rental agreement. We disagree.

Rules of construction for contracts apply to leases. *Whiteco Industries, Inc. v. Nickolick,* 571 N.E.2d 1337, 1339 (Ind.Ct.

App.1991), *trans. denied.* The construction of contracts is a question of law for which summary judgment is particularly appropriate. *Id.* In Indiana, the duty of good faith is applied in contract law only under limited circumstances such as those involving insurance contracts, *First Federal Sav. Bank of Indiana v. Key Markets, Inc.,* 559 N.E.2d 600, 605 (Ind.1990) (citing *Ford Motor Credit Co. v. Garner,* 688 F.Supp. 435 (N.D.Ind. 1988)); *Liberty Mut. Ins. Co. v. Parkinson,* 487 N.E.2d 162, 164 (Ind.Ct.App.1985), *reh'g denied, trans. denied;* however, a duty of good faith may apply to a contract where the terms of the contract are ambiguous or where the terms expressly apply such a duty. *First Federal Sav. Bank of Indiana,* 559 N.E.2d at 604 (holding that courts are bound to recognize and enforce contracts where the terms and the intentions of the parties can be readily determined from the language in the instrument, but when the intentions of the parties are not clear because of an ambiguity in the contract, the courts may be required to presume that the parties were acting in good faith when entering into the contract). Finally, a contract may incorporate another unsigned writing when the contract expressly incorporates the terms of the writing. *See Stevens v. Flannagan,* 131 Ind. 122, 30 N.E. 898, 899 (1892) (holding that a contract for the conveyance of land may describe said land by reference to descriptions in recorded deeds); *see also Dickson v. Conde,* 148 Ind. 279, 46 N.E. 998, 999 (1897) (holding that an unsigned provision of a written contract following the parties' signatures must be construed as a part of the contract where the signed portion of the contract refers to the unsigned provisions); *see also* 17A Am. Jur.2d *Contracts* § 400 (stating that when a written contract refers to another writing and makes the conditions of the writing a part of it, the two will be construed together as the same instrument).

The duty of "fairness" outlined in the rules and regulations does not apply to the lease; rather, this duty is expressly limited to the statement it precedes: the rules and regulations. The preamble to the rules and regulations states: "the spirit behind *this statement* is in the Golden Rule." (R. 527) (emphasis added). Thus, even assuming the

language of the preamble implies a contractual duty of good faith, the preamble limits itself to the rules and regulations and therefore does not apply to the conditions of the lease. Although the language of the lease incorporates the terms and conditions of the rules and regulations, the terms of each document retain their original meaning and will only effectuate the intent clearly contemplated by the language of said instruments. Thus, a statement which limits the effect and scope of a clause will retain its meaning when incorporated into another document.

 In the alternative, the Niebauer Class claims that the duty of good faith and fair dealing should apply to leases in general. In particular, it argues that a sophisticated landlord has undue influence in the execution of a lease.[3] Thus, they claim that without a duty of good faith Williamsburg can arbitrarily and unfairly raise the monthly rent. In general, however, contract law does not require such a duty:

> It is not the province of courts to require a party acting pursuant to such a contract to be "reasonable," "fair," or show "good faith" cooperation. Such an assessment would go beyond the bounds of judicial duty and responsibility. It would be impossible for parties to rely on the written expressions of their duties and responsibilities.

*First Federal Sav. Bank of Indiana,* 559 N.E.2d at 604.

 The Niebauer Class admits that Williamsburg had the right to raise rent; indeed, because the leases were month to month, Williamsburg and the tenants had the right to renegotiate the terms of the lease at the end of each successive tenancy. *See* 49 Am.Jur.2d *Landlord and Tenant* § 130 ("[E]ach new month of a month-to-month tenancy is a separate contract."). Williamsburg gave all of the tenants over one month's notice of the new monthly rent; therefore, the terms of the leases were clear and unambiguous. Under Indiana Law, a person is presumed to understand and assent to the terms of the contracts they sign. *Walb*

*Constr. Co. v. Chipman,* 202 Ind. 434, 175 N.E. 132, 135 (1931). Aside from the fact that Williamsburg is a "corporate landlord," the Niebauer Class can not point to any undue influence or unequal bargaining power exercised by Williamsburg in the execution of their respective leases; furthermore, as a matter of law, we are unwilling to extend a duty of good faith and fair dealing to corporate landlords. Like all tenants, the residents of Williamsburg were free to execute a lease with a different landlord if the terms of the lease were unacceptable. By asking this court to apply a duty of good faith to an unambiguous lease, the Niebauer Class is effectively requesting this court to rewrite the terms of an agreement where the intent of the parties is clear. Such an exercise of our discretion is without the boundaries of our authority and in clear contravention of contract law as outlined by our supreme court.

### B. Abuse of Process

 Williamsburg also argues that the trial court erred when it denied Williamsburg's motion for summary judgment on the Niebauer Class' abuse of process counterclaim. We agree.

 In order to prevail on an abuse of process claim, the Niebauer Class must prove: 1) an ulterior purpose; and 2) a willful act in the use of process not proper in the regular conduct of the proceeding. *Reichhart v. City of New Haven,* 674 N.E.2d 27, 30 (Ind.Ct.App.1996), *trans. denied.* The Niebauer Class has not raised an issue of material fact demonstrating that Williamsburg used the court system to achieve a result not proper in the regular course of an eviction proceeding. Williamsburg instituted the action against the Niebauer Class in order to evict them for failure to pay rent. Such is a proper purpose contemplated by Ind.Code § 16-41-27-30. Thus, the Niebauer Class cannot prevail on their abuse of process claim; for, " 'there is no liability where the

---

**3.** The concept of "undue influence" is "aimed at the protection of those affected with a weakness, short of incapacity ... by those in a special position to exercise such persuasion." *See* Farnsworth, Allan E., *Contracts* 2 ed. § 4.20. We assume that the Niebauer Class intended to argue that a sophisticated landlord has more bargaining power than its tenants; regardless, we conclude that neither argument raises a genuine issue of material fact.

defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.' " *Id.* (citing *Groen v. Elkins,* 551 N.E.2d 876, 878–79 (Ind.Ct.App.1990), *trans. denied* ).

### C. Civil Rights Claim

Williamsburg also argues that the trial court erred when it refused to enter summary judgment on the Niebauer Class' civil rights claim. We agree.

■ In order to maintain a civil rights action under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). Where the plaintiffs are alleging that the defendant denied them their "rights of free speech and association guaranteed by the Fourteenth Amendment as it incorporates the First Amendment, the deprivation must take the form of 'state action.' " *Lavoie v. Bigwood,* 457 F.2d 7, 9 (1st Cir.1972).

Pointing to *Lavoie,* the Niebauer Class argues that an ejectment proceeding used in retaliation for a plaintiff's exercise of their constitutional rights may constitute state action under certain circumstances. *Id.* at 10–11. In *Lavoie,* plaintiffs were also evicted from a mobile home park. The tenants alleged that their eviction stemmed from their participation in a tenants association and from complaints to public officials regarding park management. The *Lavoie* Court determined that because the zoning regulations in the plaintiff's municipality had effectively given one mobile home park a monopoly status, the mobile home park was a state actor, *id.* at 13–14; however, the court was careful to state:

> "an ejectment in retaliation for the exercise of First Amendment rights is, without more, 'purely private' action. The state simply affords the landlord a method of

vindicating his property rights without inquiring as to the landlord's motive in doing so...."

*Id.* at 12.

■ We find the *Lavoie* case inapposite to the issues at bar. As mentioned, in *Lavoie* the landlord evicted the tenant because the tenant belonged to a tenants' association and complained to public officials about park management. Williamsburg, on the other hand, threatened eviction because the Niebauer Class did not pay rent. The Niebauer Class argues, however, that the ejectment proceedings were an attempt by Williamsburg to squash their civil rights; yet, Williamsburg offered all of the tenants an opportunity to avoid eviction by sending notices to quit with a time period to cure their failure to pay full rent.[4] Under the lease, Williamsburg had every right to evict tenants who did not comply with these demands. In short, Williamsburg has offered ample evidence that it had a right to institute eviction proceedings against tenants who refused to pay the new rental amounts; in addition, Williamsburg designated evidence that the eviction proceedings were instituted only to procure compliance with the lease by showing that they offered everyone an opportunity to stay at the mobile home park if they tendered full rental payment.[5] As the Niebauer Class has not rebutted such evidence to show a genuine issue of material fact, as is its burden under T.R. 56(C), summary judgment on the civil rights counterclaim against the Niebauer Class is appropriate.

■ Even if evidence were offered by the Niebauer Class which rebutted this evidence, the Niebauer Class has still not met its burden under the *Lavoie* analysis. In order to prevail under the *Lavoie* test, the Niebauer Class must present some evidence that the State has placed monopoly power in private hands in order to implement public policies. *Id.* at 13. The Niebauer Class has pointed to several municipal and state statutes which

---

4. The Notices to Quit were sent pursuant to Ind.Code § 32–7–1–6, allowing a ten day period for an opportunity to cure.

5. The Niebauers claim that they were "singled out" for eviction for being the "ringleaders" of

the rent protest; yet, the Niebauers were given a notice to quit with an opportunity to cure like all of the other tenants. The Niebauers simply ignored the warning and refused to pay the full rental amount.

confer exclusive rights on mobile home park owners not enjoyed, for example, by apartment landlords, see Ind.Code § 16–41–27–29 and –30; additionally, it has proffered state statutes and administrative regulations which place restrictions on owners of mobile home parks. See Ind.Code § 16–41–27–1 to –34; see also 410 AIC 6–6–1 to –15. Nowhere, however, in their pleadings or in their designation of evidence does the Niebauer Class allege that Williamsburg has a monopoly in the surrounding municipality. By extension, therefore, it does not allege that Williamsburg was a state actor or acted under the color of state law. Thus, the Niebauer Class presents no genuine issue of material fact with respect to this argument.

In the alternative, the Niebauer Class argues that the regulations placed on the mobile home industry by the State create a symbiotic relationship between Williamsburg and the State, and therefore, Williamsburg is a state actor for purposes of 42 U.S.C. § 1983. Again, we disagree.

In support of their argument, the Niebauer Class cites Weigand v. Afton View Apartments, 473 F.2d 545 (8th Cir.1973). In Weigand, the court held that the private party was not a state actor because the private party was not subject to continuous state regulation. In support of this holding, the Weigand court cited Male v. Crossroads Associates, 469 F.2d 616, 621 (2nd Cir.1972). In Male, the court held that "the mere existence of a state or federal regulatory scheme standing alone with nothing more is not sufficient to bring those regulated within the scope of the Fourteenth Amendment...." Id. As the Niebauer Class has done nothing more than allege the existence of a regulatory scheme, they have failed to raise a genuine issue of material fact with respect to this argument as well.

### D. Equity

Williamsburg argues that the trial court erred by not entering summary judgment against the Niebauer Class on its equity counterclaim. Again, we agree.

■ One who comes before a court in equity must do so with clean hands. Tomahawk Village Apartments v. Farren, 571 N.E.2d 1286, 1294 (Ind.Ct.App.1991). For the doctrine of unclean hands to apply, the movant must be guilty of intentional misconduct. Id. In the present case, the members of the Niebauer Class intentionally breached their respective leases by not making full payment of their rent. Thus, their intentional misconduct induced the threats of eviction. Even though the doctrine of unclean hands is reluctantly used by this court, the members of the class expressly refused to comply with the terms of the lease, precluding them from proceeding in equity.

■ Even if some members of the class did not breach the contract, the Niebauer Class is still precluded from proceeding in equity. The Niebauer Class does not specify in their argument exactly what theory they wish to pursue in equity; nevertheless, as discussed supra, the counterclaims raised by the Niebauer Class are without merit. First, equity requires a party to comply with and carry out the terms of its contract, Smith v. Sparks Milling Co., 219 Ind. 576, 39 N.E.2d 125, 133 (1942); thus, the Niebauer Class has failed to raise a genuine issue of material fact with regard to their breach of contract counterclaim; second, the Niebauer Class has been unable to raise a genuine issue of material fact with regard to the alleged violation of their civil rights; and third, the Niebauer Class has been unable to raise a genuine issue of material fact regarding Williamsburg's alleged abuse of process. Thus, the Niebauer Class has not raised any genuine issues of material fact or, for that matter, any theories upon which to proceed in equity.

### II.

Finally, Williamsburg argues that the trial court erred when it certified the action underlying this appeal as a class action. In particular, Williamsburg argues that the class action claim does not comply with Trial Rule 23(A)(2), the prerequisite of commonality, Trial Rule 23(A)(3), the prerequisite of typicality, and Trial Rule 23(B). We disagree.

■ When reviewing a trial court's certification of a class action, this court employs an abuse of discretion standard of review. American Cyanamid Co. v. Stephen, 623 N.E.2d 1065, 1070 (Ind.Ct.App.1993). Accordingly, we only look to the evidence

most favorable to the judgement and all reasonable inferences to be drawn therefrom to determine whether the trial court abused that discretion. *Id.* To obtain class certification, the representative plaintiffs must satisfy all of the prerequisites of Trial Rule 23(A). Trial Rule 23(A) states that members of a class may sue as representative parties on behalf of the entire class if:

1) the class is so numerous that joinder of all members is impracticable;

2) there exists questions of law or fact common to the class;

3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and,

4) the representative parties will fairly and adequately protect the interests of the class.

Trial Rule 23(A). If a party meets all four of the above requirements, the representative plaintiffs must also meet at least one of the prerequisites of Trial Rule 23(B). In the present case, the trial court expressly certified the action as a class action pursuant to Trial Rule 23(B)(3). Trial Rule 23(B)(3) states:

[An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

■ Trial Rule 23(A)(2) requires that questions of law or fact be common to the class. *ConAgra, Inc. v. Farrington,* 635 N.E.2d 1137, 1140 (Ind.Ct.App.1994). In the present case, the Niebauers, the Wines, and the class allege in their four counterclaims that Williamsburg: 1) breached a duty of good faith in the lease, 2) abused or threatened to abuse eviction proceedings if the tenants proceeded with their rent protest, 3) used the eviction proceedings to repress the tenant's First Amendment Rights, and 4) unfairly raised rent, permitting the tenants to proceed in equity. Although the members of the class fail to present genuine issues of material fact on any of the above claims, their disputes with Williamsburg arise from the same facts. Because the core issues are common to all members of the class, we

conclude that the Niebauer Class has satisfied the prerequisite of Trial Rule 23(A)(2). *Bank One Indianapolis, N.A. v. Norton,* 557 N.E.2d 1038, 1042 (Ind.Ct.App.1990).

■ Trial Rule 23(A)(3) permits class action lawsuits only if questions of law or fact are typical to the class. *ConAgra,* 635 N.E.2d at 1141. As the *ConAgra* court stated:

"[T]ypical" as used in T.R. 23(A)(3) does not demand proof of the existence of identical claims, rather *it requires only a showing that the class representatives' interests are not antagonistic or in conflict with the class as a whole. Arnold v. Dirrim,* (1979), Ind.App., 398 N.E.2d 426, 436. Typicality may be satisfied if the claims of the representatives and class members stem from a single event or are based on the same legal theory. *Id.* at 436–37.

*Id.* (emphasis added). In support of their motion to decertify the class action, Williamsburg points only to differences between the Niebauers' claim and the claims of the class; however, Williamsburg has not established that the claims of the Niebauers are antagonistic to the class. Accordingly, we conclude that the Niebauer Class has met the prerequisite of Trial Rule 23(A)(3) as well.

■ Finally, Trial Rule 23(B)(3) permits a class action lawsuit if the questions common to the class predominate over questions of individual members. Williamsburg argues that the claims of the Niebauers differ from the other members of the class because the Niebauers were only one of a few members of the class who were singled out for eviction. Nevertheless, the entire class claims that the *threat* of eviction proceedings for failure to tender the additional rent was an abuse of process, violation of civil rights, and breach of contract. Thus, reviewing the evidence most favorable to the trial court's judgment, we conclude that the essential issues raised by the Niebauer Class predominate over any individual issues. Granted, the Niebauers and the Wines have failed to raise a genuine issue of material fact; however, we conclude that the failure of the representative plaintiffs and the class to raise a genuine issue of material fact will not decertify the class so as

to save the individual class members from the effect of summary judgment.

Accordingly, we conclude that the trial court did not err when it certified the action underlying this appeal as a class action.

Affirmed in part and reversed in part.

KIRSCH and STATON, JJ., concur.