**BURKHART ADVERTISING, INC., Plaintiff,**

v.

**LOWE'S HOME CENTER, INC., Defendant.**

**No. 3:01cv 0668 AS.**

United States District Court, N.D. Indiana, South Bend Division.

March 29, 2002.

Thomas F. Lewis, South Bend, IN, James A. Masters, South Bend, IN, for plaintiff.

James F. Groves, James P. Ehrhard, South Bend, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This cause is before the Court on the Defendant's Motion for Summary Judgment filed on January 24, 2002. The case concerns the Defendant's removal of a large advertising sign owned by the Plaintiff. At issue is language in a lease agreement which states that the Lessor may terminate the lease upon commencing construction of a permanent substantial building on the premises *requiring* removal of the sign. The parties agree that the Defendant commenced construction of a permanent substantial building on the property, but the Plaintiff's argue that construction of the building did not *require* removal of the sign because the sign was not located on the site of Defendant's building. The Defendant argues, however, that the sign interfered with construction of the building and therefore had to be removed. The Court has considered the submissions of the parties and now rules as follows.

### I. JURISDICTION

This case was initially filed in State court, but was removed to this Court under 28 U.S.C. § 1441. Removal was based on federal diversity jurisdiction under 28 U.S.C. 1332. The Plaintiff's Complaint alleged damages in the amount of $532,900.00, sufficient to satisfy the required amount in controversy to be in federal court of $75,000 pursuant to 28 U.S.C. § 1332(a).

### II. RELEVANT FACTS

The factual background for this case is drawn from contracts and letters exchanged between the parties and their counsel before suit was filed. Def.'s Mem. in Supp. at 2, and Def.'s Exhibits. The Plaintiff only disputes one factual issue, whether construction of Defendant's building *required* removal of the sign. Pl.'s Mem. in Opp. at 3. In June of 1999, Carl N. Wendel, Lessor, entered into a lease with Burkhart Advertising, Lessee, that allowed Burkhart to place a flag-type advertising sign on Wendel's property at the intersection of U.S. 30 and S.R. 15 in Warsaw, Indiana. Def.'s Mem. at 2–3; Pl.'s Mem. at 4. The Lease Agreement was a one-page, preprinted form prepared by Burkhart. Pl.'s Ex. 1. It provided that Burkhart would pay $1,000 per year for a minimum of five (5) years, and that the Lease would automatically renew for up to twenty (20) years unless canceled by the Lessee, Burkhart, in writing. Id.

The only provision in the Lease allowing the Lessor, Wendel, to terminate the Lease Agreement stated, "Lessor may terminate this lease upon commencing construction of a permanent substantial building on said premises requiring removal of Lessee's sign, structures and equipment." Id. To invoke this provision, the Lessor had to give Burkhart thirty (30) days advance notice in writing and refund any prepaid rent. Id. The sign was completed on September 2, 1999.

In 2000, Wendel began negotiating with Defendant Lowe's Home Center, Inc. (Lowe's) to sell the tract of land on which the sign was located for the purpose of building a Lowe's Home Improvement Warehouse Store. Def.'s Mem. at 4, and Ex. D. As a condition precedent to the purchase of this property, Lowe's Engineering Manager, Brent S. Edmiston, had to review Site Development matters and deliver a "Clearance." Affidavit of Brent S. Edmiston at ¶ 5. Edmiston determined that the development and operation of the entire property for a Lowe's Warehouse retail store required removal of the Plaintiff's Sign for the following reasons:

 a. Prior to building pad construction, an existing overhead electric transmission line, owned and to be relocated by

NIPSCO, had to be relocated out of Lowe's proposed building pad area so that overexcavation and surcharging of the building pad could be completed. The Sign was in a location that did not meet clearance requirements by NIPSCO per their revised plan.

b. Prior to building pad construction, an existing water main had to be relocated outside of Lowe's building pad area. Through conversations with Lowe's Construction Department it was determined that the Sign was in a location that posed conflicts with construction of the relocated service and tap to Highway 30.

c. Proposed fill for the building pad and site included the area where the Sign was located. The sign had to be relocated so that proposed fill and surcharge could be placed per the construction documents. If the sign had remained, the construction plans would have had to be revised, causing construction delays and Lowe's additional money. A temporary retaining wall could have been constructed around the Sign, but would have added costs to the project. It is my understanding that Lowe's would not have proceeded with the development if additional costs were anticipated.

d. During the approval process, it was determined that the Sign would count against permitted site signage for our proposed project. Once this was determined, Real Estate was notified and it was made part of the real estate agreement with Wendel that the lease for the Sign would be terminated.

Edmiston Aff. at ¶ 4. Edmiston also stated that he would not have cleared the project for closing with the Sign remaining on the property for these reasons, and that removal of the sign was a requirement for Lowe's purchase, development, and operation of the property. Id. at ¶ 5.

Before terminating the Lease Agreement, Wendel contacted Crisman S. Jones, Jr. of Venture Properties II, LLC,[1] and received a letter from Jones on September 21, 2000. This letter stated that the "referenced Lease Agreement provides for termination by Lessor upon commencing construction of a permanent substantial building, provided Lessor has given Lessee at least thirty (30) days advance notice in writing and has refunded any prepaid rent hereunder to Lessee." Def.'s Ex. A. In addition, it states, "Please provide such notice to Burkhart Advertising, Inc., thereby terminating the Lease Agreement on or before November 1, 2000. In addition, please provide evidence of the termination to me for my file." Id.

In response to this letter, Wendel issued a written notice to Burkhart to terminate the Lease Agreement on October 11, 2000, prior to selling the property to Lowe's. Def.'s Ex. B. On October 24, Crisman Jones sent a letter to Bruce VanDerBeek at Burkhart Advertising, which stated as follows:

As discussed, please find enclosed a preliminary plat and site plan for the new Lowe's Home Center to be located on a portion of Carl Wendel's property in Warsaw. We understand Mr. Wendel has provided notice to Burkhart Advertising, Inc. to terminate the referenced lease due to construction of a permanent building on the property. Please know that Mr. Wendel and Lowe's Home Centers, Inc. are in agreement to allow the relocation of the billboard sign to a new location on U.S. Highway 30, 700 feet west of the existing location on remain-

1. The relationship between Mr. Jones of Venture Properties II, LLC and the parties is not stated in the record, but it appears that he was the broker working on the real estate transaction between Wendel and Lowe's. *See,* Pl.'s Mem. at 3, F.N. 1.

ing Wendel property. We expect construction of Lowe's Home Center to commence on Wednesday, November 1, 2000. Please make arrangements to remove or relocate the sign as soon as possible.

Id.

Burkhart did not remove the sign. On December 15, 2000, Wendel signed an assignment of his rights under the Lease Agreement over to Lowe's, which includes a provision agreeing to allow relocation of the sign to his adjacent property. Def.'s Ex. D. On the same date, Lowe's notified Burkhart in writing that it had assumed rights under the Lease, and was delivering thirty (30) days notice and requiring removal of the billboard from the premises. Def.'s Ex. E. Lowe's enclosed a check for $750 as reimbursement for prepaid rent for the 2000–2001 lease year. Id.

Burkhart still did not remove the sign. On May 9, 2001, Lowe's had the sign and structure removed. Def.'s Ex. F. The sign was moved to the adjacent Wendel property, but the pole was left "lying on the ground." Pl.'s Mem. at 5. On May 10, 2001, Lowe's sent a letter informing Burkhart that the sign had been removed, and that it had secured a short-term lease on the adjacent property for assignment to Burkhart that would expire on July 31, 2001. Def.'s Ex. F. The letter also states, "The New Lease describes as the leased premises a portion of the Adjacent Property that Wendel and Bruce Vanderbeek (sic), as agent of Burkhart, had chosen for the Structure prior to the Notice of Termination." Id.

On August 22, 2001, Burkhart filed suit in the Kosciusko County Circuit Court for breach of contract. On the same date, the Plaintiff asked for attachment of the Defendant's property and posted a $55,000 bond. The attachment was entered by the clerk of the Kosciusko County Circuit Court on the same day. On September 21, 2001, the Defendant's removed the action to this Court. On October 1, 2001, the Defendant filed a Motion to Stay and Vacate the Order of Attachment, which this Court granted on March 8, 2002.

## III. STANDARD OF REVIEW

The standard a court employs in reviewing a motion for summary judgment is now well-established. Summary judgment is proper only if the record shows that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and Anderson addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "des-

ignate 'specific facts to show that there is a genuine [material] fact for trial.'" Id. The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994), *cert. denied*, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991), *reh'g denied*, 1993 WL 518446. **On a motion for summary judgment, the Court must not weigh conflicting evidence, but rather determine whether the non-moving party has presented sufficient evidence for a reasonable factfinder to decide in his favor.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. 2505. Applying these standards, the Court now considers the Defendant's Motion.

### IV. DISCUSSION

 In a diversity case, federal courts apply federal procedural law and state substantive law, with rules of contract interpretation falling in the substantive category. *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir.2001), *rehearing denied, citing Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agree that Indiana law applies. The Lease Agreement is a contract under Indiana law, and the Lessor–Lessee relationship is contrac-

tual in nature. *Schuman v. Kobets*, 716 N.E.2d 355, 356 (Ind.1999). Therefore, the rules of construction for contracts apply to interpreting leases. *Lake County Trust Co. v. Wine*, 704 N.E.2d 1035, 1039 (Ind.Ct.App.1998).

 Contracts are usually enforced in accordance with the ordinary meaning of the language used in them, without recourse to evidence, other than the contract itself, as to what the parties meant. *Beanstalk*, at 859. However, if the meaning of the contract is ambiguous or uncertain, then the court is allowed to entertain extrinsic evidence to determine its meaning, and its construction becomes an issue of fact. *Allen*, 236 F.3d at 380, *citing Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1311 (Ind.Ct.App.1991). The construction of an unambiguous contract is a question of law for the court to decide. *Id.* On the other hand, if the ambiguity arises because of the language used in the contract and not because of extrinsic facts, then its construction is still a question of law for the court to decide. *Id., citing Bicknell*, 570 N.E.2d at 1311; *referencing also First Federal Savings Bank v. Key Markets, Inc.*, 559 N.E.2d 600, 603 (Ind. 1990). The Defendant also asks the Court to apply the rule of contract construction that requires that ambiguities be resolved against the drafter, but the Seventh Circuit has just recently held that where both parties are commercially sophisticated and represented by counsel, this rule does not apply. *See, Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856 (7th Cir.2002), at p. 3.

In this case, the parties disagree over the language of the contract, and specifically the meaning of the phrase "requiring removal". The Defendant argues in its Motion to Dismiss that this language is ambiguous. The Plaintiff claims that the language is not ambiguous, and that the real issue in this case is whether construc-

tion of the Defendant's *building* did in fact *require removal* of the sign. The Plaintiff claims that this is an issue of fact not suitable for summary judgment. The Court will therefore discuss first whether the contract is ambiguous, and then whether construction of the Defendant's store required removal of the Plaintiff's sign.

## A. Is the Lease Agreement Ambiguous?

■ The Defendant suggests at least three possible meanings for the disputed phrase, "Lessor may terminate this lease upon commencing construction of a permanent substantial building on said premises requiring removal of Lessee's sign." First, Lowe's suggests that the phrase refers back to the subject of the sentence, the Lessor, and it means that if the Lessor commences construction, etc., and Lessor requires removal of the sign, which Lowe's has done, the termination clause in the Lease Agreement is satisfied. That interpretation is a far stretch, in light of the location of the phrase after the word "building".

The second interpretation, which appears to be the Plaintiff's interpretation, is that the phrase "requiring removal" modifies just the word "building", meaning that the Lease Agreement cannot be terminated unless the building will sit on the precise spot occupied by the sign. The Plaintiff claims that the subject of this sentence is the word "building", therefore, the building itself must require removal of the sign.[2] Id. at p. ——. Based on this view, the lease can be terminated and the sign removed "only if the building to be constructed on the premises makes removal of the sign necessary."

The Plaintiff supports this interpretation by pointing to language in the lease indicating Burkhart's intention to protect its rights to maintain the sign on the premis-

es. In addition, the Plaintiff has provided the Affidavit of Peter T. Owsianowski, the General Manager and Vice President of Burkhart Advertising. He stated that in his twelve and one-half years of experience with the Plaintiff, the term in question has always been interpreted to apply only when the sign is in the same spot where the building is intended to be located. Owsianowski Aff. at 6. He gives two examples involving the same term in Plaintiff's standard lease agreement form that is at issue in this case. Id. In both examples, the owner wished to add something to the main building, but Burkhart's sign was in the way. Id. The Plaintiff claimed that the termination clause did not apply. Id. In the first instance, the property owner had to negotiate terms for a new lease in order to move the sign. Id. In the second, the building owner was required to pay to move the sign because construction of the *building* did not require removal of the sign. Id. (emphasis in the original).

The third interpretation of the "requires removal" phrase is that it modifies the whole phrase "construction of a permanent substantial building". Under this interpretation, if the Lessor determines that *construction* of the building requires removal of the sign, then the Lease Agreement may be terminated by the Lessor with written notice and return of any prepaid rent requirements. The Defendant also argues for this interpretation in the event that its first argument is rejected by the Court.

The Court first concludes that the ambiguity in this contract, if one exists, is based on the language of the contract and does not involve a factual dispute. Therefore, interpretation of the contract is a legal question amenable to resolution at the summary judgment stage. After carefully considering the language of this sen-

---

**2.** As already noted, the subject of this sentence is Lessor. Maybe the Plaintiff meant to

say that the phrase "requiring removal" modifies the word "building".

tence, and the arguments made by both parties, the Court has determined that the Defendant's first interpretation is too broad, and the Plaintiff's interpretation is too narrow. It tortures the language of the sentence to try and make the subject of the sentence, Lessor, also the subject of the participial phrase, "requiring removal." If the Lease said "by requiring removal", this interpretation would be plausible, but as written, it does not work.

The Plaintiff's interpretation also encounters problems. In a technical sense, it is never the building itself that requires removal of the sign, but construction of the building, whether it is on the same site as the sign or simply nearby. Nevertheless, the Plaintiff claims that the phrase only applies if the building itself requires removal of the sign because it is on the same site as the sign. This is a narrowing of the obvious meaning of the sentence for which the Court can find no basis in the plain language of the contract.

The Plaintiff's examples are of only slight help in establishing that the sign must be in the same location as the building for the termination clause to apply. They do provide evidence that the Plaintiff would not allow termination of the contract where the owner wanted to place part of a relatively small building on the site where the sign was located.[3] However, the Plaintiff does not claim that these projects amounted to "construction of a permanent, substantial building." In addition, neither

case was resolved in a court of law, so they do not reflect a legal interpretation of the contract. Also, what facts the Court has to consider on these cases can be distinguished from the present case. In both cases, the Plaintiff allowed the sign to be moved and the owners were able to go forward with their plans. The issue appears to have been who had to pay for moving it. The owners in both situations may have determined that it was less expensive to move the sign than pay to defend a lawsuit. This says nothing about the validity of the Plaintiff's interpretation of the contract.

In this case, the parties were negotiating about moving the sign, and had even settled on a site 700 feet down the road, but the Plaintiff ultimately refused to move the sign, knowing that Lowe's would not buy the property if the sign had to stay. Therefore, the issue became whether an advertising sign lease worth $1,000 per year could block Wendel's sale of the property for a purpose expressly provided for in the Lease Agreement, construction of a permanent, substantial building requiring removal of the sign. Looked at in this way, the Plaintiff's interpretation does not make much sense.[4] A major building project involves much more than just the placement of the building. As this case illustrates, there are other aspects of construction of a "permanent substantial building" that might require removal of Plaintiff's signs. The Court concludes that

---

3. One of the buildings was a Quick–Lube in Kokomo, Indiana, and the proposed service bays were to be in the same location as the sign. Owsianowski Aff. at 6. The other was a Boston Chicken outlet in Kokomo, and the owner wanted to construct a drive through on the site where the sign was located.

4. Chief Judge Posner, writing for the Court in *Beanstalk*, talked at length about the necessity for courts to interpret contracts in a way that makes sense. He quoted a recent opinion from the First Circuit Court of Appeals, which

said, "There is a long tradition in contract law of reading contracts sensible; contracts—certainly business contracts of the kind involved here—are not parlor games but the means of getting the world's work done ... True, parties *can* contract for preposterous terms. If contract language is crystal clear or there is independent extrinsic evidence that something silly was actually intended, a party may be held to its bargain, absent some specialized defense." *Beanstalk*, at 860, quoting, *Rhode Island Charities Trust v. Engelhard Corp.*, 267 F.3d 3,7 (1st Cir.2001).

the logical interpretation of the Lease Agreement is that the Lessor may terminate it upon commencement of construction of a permanent substantial building if *construction* of the building requires removal of the sign.

## B. Did Construction of Defendant's Store Require Removal of Plaintiff's Sign?

**The Defendant has presented evidence in the form of an Affidavit by its Engineering Manager listing four reasons why he could not clear the site for purchase if the Plaintiff's sign had to remain on the site.** The Plaintiff counters with an Affidavit from its General Manager and Vice President accompanied by photographs and copies of Lowe's site plan and topographical map for the building. The Plaintiff asserts that "[t]he site plan and topographical plan show that the location of the building on the site did not make it necessary to remove Burkhart Advertising's sign." Pl.'s Mem. at 3. The Plaintiff's Memorandum does not claim that Mr. Oswianowski is an engineer.

**In essence, the Plaintiff is asking** this Court to perform the function of an engineer and determine from a physical inspection of the site, the site plan, and the topographical map, that construction of the Defendant's building did not require removal of the sign. That is within the realm of expert witnesses, and yet the Plaintiff has not provided this Court with the benefit of an expert on this subject. At the summary judgment stage, the opposing party must provide the Court with sufficient admissible evidence that a reasonable juror could find in its favor. Self-serving affidavits and conclusory allegations are not sufficient to survive a motion for summary judgment.

The Plaintiff has provided no solid evidence that NIPSCO did not require removal of the sign as stated by Defendant's engineer, or that the sign did not interfere with relocation of the existing water main. The evidence that the Plaintiff received permits to construct the sign says nothing about whether the sign would meet clearance requirements after electric lines were relocated because of the Defendant's new store. Instead of scientific evidence, or testimony from NIPSCO, the Plaintiff put into evidence the opinion of its general manager, and an invitation for the Court to study pictures of the site, a site plan, and a topographical map on its own, without the guidance of an expert witness. The Court concludes that this evidence is insufficient as a matter of law for a reasonable trier of fact to find in the Plaintiff's favor on this issue.

The Plaintiff suggests that the Engineers other two reasons for concluding that the sign had to be removed—that leaving the sign would increase construction costs, and that it would count against permitted site signage for Lowe's proposed project—were perhaps the real reason it "tore down Burkhart's Advertising sign." Pl.'s Mem. at 11. These, the Plaintiff argues, were not legitimate reasons to terminate the contract. However, the Court must keep in mind that at the time the engineer was studying the site, he was considering whether to clear the site for purchase, as Lowe's did not yet own the property. At this point in time, these were legitimate considerations in determining whether the site should be cleared for purchase if the sign could not be removed. Whether they would be sufficient by themselves to invoke the termination provision is irrelevant, as the Court concludes that the construction project as a whole required removal of the Plaintiff's sign, which in turn allowed the Defendant to terminate the Lease Agreement.[5]

5. Burkhart may be estopped from bringing this suit because it knew about the real estate

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is hereby **GRANTED.** Each party is to pay its own costs.

**IT IS SO ORDERED.**

transaction and Lowe's required removal of the sign, and yet failed to make its objections known to either party before the sale. On the contrary, prior to the sale, Burkhart appeared willing to move the sign, and one of its agents even agreed to a new location, in principle if not on paper. However, as the parties do not raise this issue, the Court need not rule on it.