**CHARLES DOWNEY FAMILY LIMITED PARTNERSHIP,**
Appellant,

v.

**S & V LIQUOR, INC., Appellee.**

No. 02A03–0708–CV–369.

Court of Appeals of Indiana.

Feb. 8, 2008.

Stephen L. Fink, Barnes and Thornburg, LLP, Max A. Myers, Myers Law Office, Fort Wayne, IN, Attorneys for Appellant.

Michael H. Michmerhuizen, Patrick G. Murphy, Barrett & McNagny, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Charles Downey Family Limited Partnership ("CDFLP") appeals the amount of damages it was awarded in its eviction action against S & V Liquor, Inc. ("S & V"). It also appeals the trial court's award of attorney fees to S & V. We affirm.

### Issues

The issues before us are:

I.   whether the trial court properly calculated the damages CDFLP was entitled to following S & V's continuing to occupy property CDFLP owned beyond the lease's expiration; and

II.  whether the trial court properly awarded attorney fees to S & V for CDFLP's alleged bringing of a frivolous or groundless claim against S & V.

### Facts

On October 18, 1999, Charles Downey, as lessor, and S & V, as lessee, entered into a commercial retail lease for property in Fort Wayne. The term ran from November 1, 1999 to January 31, 2005, and the monthly rent was $3,333.33. In 2003, Downey's interest in the lease was assigned to CDFLP after its formation. Downey has a forty-eight percent interest in CDFLP, his wife has a forty percent interest, and their children own the remainder. CDFLP is in the business of owning and leasing out various commercial properties. Through another entity owned by Downey's children, he negotiates all real estate transactions concerning CDFLP.

The S & V lease contained no provisions regarding holdover tenancies, unlike most of the leases CDFLP entered into with other tenants. The S & V lease did contain an option to renew for an additional five years, if S & V gave written notice of intent to renew no later than 120 days prior to the lease's expiration.

S & V did not send written notice of intent to renew the lease. On November 15, 2004, CDFLP wrote a letter to S & V stating:

The following are the terms under which Downey Family Ltd. Partnership will renew the above referenced lease beyond January 31, 2005. Rent would be $22.00sf or $9167.67 per month plus prorata share of net charges for taxes, insurance and common area expenses for full month occupancy, no partial month occupancy will be allowed. In addition there would be a $15,000.00 refundable security deposit.

Appellant's App. p. 92. S & V neither responded to this letter nor paid a security deposit. Instead, on January 26, 2005, S & V sent a letter to Downey stating that it intended to continue occupying the property "as a holdover tenant, until June 30, 2005...." *Id.* at 94. S & V advised that it was in the process of constructing a new facility that was not yet completed, but intended to move there once it was finished. The letter also stated that S & V "is willing to continue working with you and will continue to pay all monthly rent due and owing under the Lease...." *Id.*

Meanwhile, in October 2004, CDFLP had entered into a lease with All Glass, LLC ("All Glass") for the property then occupied by S & V. The lease was to begin February 1, 2005, at a monthly rental rate of $6,000. Dan Weingartner, an All Glass employee, signed the lease on behalf of All Glass. However, Downey and his son, attorney Brian Downey, prepared the lease, and Weingartner "had no say in it." *Id.* at 148. All Glass was owned by All Construction, LLC, which in turn was owned entirely by two of Downey's other children, Brandon and Kelli. It was intended that Kelli would manage an All Glass retail store in the space occupied by S & V, after she sold another business she was operating. However, the sale of that business fell though in January 2005. After that occurred and it was evident Kelli would not be able to manage the All Glass store, CDFLP did not attempt to enforce the All Glass lease or open the retail store. Instead, on February 1, 2005, Weingartner wrote a letter stating that All Glass was terminating the lease. Kelli and Downey "were happy to get out of this lease, to be real honest with you.... [T]his just gave us a chance to, to walk away." *Id.* at 146.

Although S & V tendered rent payments to CDFLP after termination of the original lease, CDFLP did not cash them. On March 15, 2005, CDFLP filed suit against S & V. The first count of this complaint sought to eject S & V from the premises. The second count of the complaint sought damages, by reference to the $6,000 monthly rent provided by the All Glass lease: "Since All Glass, LLC has exercised its right to terminate that lease, CDFLP stands to lose a substantial amount of money on a monthly basis due to the breach of S & V." *Id.* at 58. On or about June 1, 2005, S & V moved out of the premises.

On June 23, 2006, S & V filed an amended answer and added a counterclaim against CDFLP. S & V's counterclaim alleged that Count II of CDFLP's complaint was frivolous, unreasonable, and/or groundless because it was clear All Glass was not going to move into the premises S & V was occupying.

On July 11, 2006, CDFLP moved to amend its complaint by adding counts III and IV. Count III sought damages in the amount of $9,167.67 per month for each month S & V held over after the lease expired. Count IV sought damages in the amount of the fair market rental value of the premises for the period S & V held over.

On July 13, 2006, CDFLP moved for summary judgment, seeking attorney fees and damages as outlined in count III of its amended complaint, i.e. $9,167.67 per each month of S & V's holdover. S & V filed a

response and cross-motion for summary judgment. It admitted CDFLP was entitled to some damages, but claimed that it only was entitled to the fair market rental value of the premises for the period S & V remained on the premises after the lease's expiration. Additionally, S & V sought summary judgment on its counterclaim for attorney fees on the basis that count II of CDFLP's complaint was frivolous, unreasonable, and/or groundless.

On December 29, 2006, the trial court entered its summary judgment order. It concluded that CDFLP was entitled to the monthly rental amount under the expired lease—$3,333.33—for the period from February 1 to March 15, 2005, or when CDFLP filed suit against S & V. For the period from March 15, 2005 to June 30, 2005, the trial court concluded CDFLP was entitled to the fair market rental value of the premises, and that such value also was $3,333.33 per month. Thus, it awarded damages to CDFLP of $16,666.65, or $3,333.33 times five months. It also concluded CDFLP was entitled to attorney fees for prosecuting this action, but also that S & V was entitled to attorney fees for defending against count II of CDFLP's complaint. The trial court did not determine the amount of each party's attorney fees until June 7, 2007. It found CDFLP's reasonable attorney fees to be $5,464.50, and S & V's to be $26,179.75. When adding the rent to which CDFLP was entitled to its attorney fees, the total amount is $22,131.15, or $4,048.60 less than S & V's attorney fees award. Thus, the trial court entered judgment in favor of S & V for $4,048.60. CDFLP now appeals.

## Analysis

We apply the same standard as the trial court when reviewing a summary judgment ruling. *Beineke v. Chemical Waste Mgmt. of Indiana, LLC,* 868 N.E.2d 534, 537 (Ind.Ct.App.2007). Summary judgment should be entered if the designated evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *Beineke,* 868 N.E.2d at 537. On review, all facts and reasonable inferences drawn from them are construed in favor of the nonmoving party. *Beineke,* 868 N.E.2d at 537. "We will affirm a grant of summary judgment if it can be sustained on any theory or basis in the record." *Id.* The standard of review here is not altered by the fact that there were cross-motions for summary judgment. *See id.*

### I. Measure of Damages

■ CDFLP claims the trial court erred in calculating the damages it was owed for S & V's holdover. Specifically, it claims the trial court was required to charge S & V $9,167.67 per month for each month S & V remained on the premises beyond the expiration of the original lease, in accordance with CDFLP's letter to S & V advising that it was willing to renew the lease at that monthly rent. S & V does not deny that it owes rent to CDFLP for the months it held over, but claims that amount must be calculated according to the fair market rental value of the premises, as the trial court did.[1]

---

1. The trial court actually concluded that between February 1 and March 15, 2005, when CDFLP moved to evict S & V, S & V owed CDFLP the same rental as provided in the original lease, but after March 15, 2005, CDFLP was entitled to the fair market rental value. Because, ultimately, the trial court concluded that the fair market rental value was equivalent to the original lease's rent, this distinction is meaningless. We may affirm summary judgment on any theory, and we focus on the theory of fair market rental value from the beginning of S & V's holdover on

CDFLP asserts that because S & V remained on the premises after receiving CDFLP's renewal offer listing the $9,167.67 monthly rent, S & V essentially agreed to pay that amount to CDFLP for each month it remained on the premises after the first lease's expiration. CDFLP relies primarily upon this court's decision in *Lake County Trust Co. v. Wine*, 704 N.E.2d 1035, 1040 (Ind.Ct.App.1998). In *Wine*, a mobile home park leased lots to tenants on a month-to-month basis. One month, the park decided to raise the rent for the lots by seven percent. When several residents continued paying the old rent instead, the park returned their checks and sued to evict them. The tenants filed counterclaims against the park for breach of contract, abuse of process, civil rights violations, and equity. The park moved for summary judgment on the tenants' counterclaims, which the trial court denied.

On appeal, we reversed the denial of summary judgment. With respect to the tenants' breach of contract claim, we rejected their argument that a duty of good faith and fair dealing should have been incorporated into the lease. *Wine*, 704 N.E.2d at 1039–40. Instead, because the tenancies were month-to-month, the park and the tenants had the right to renegotiate the terms of the lease at the end of each successive tenancy, and the tenants admitted that the park had the right to raise the rent. *Id.* at 1040. We also rejected the tenants' abuse of process claim because the park had instituted suit against them for a proper purpose, i.e. to evict them for failure to pay proper rent. *Id.* As for the civil rights claim, we held that the park had "offered ample evidence that it had a right to institute eviction proceedings against tenants who refused to pay the new rental amounts...." *Id.*

at 1041. Finally, we rejected the tenants' argument that it was inequitable for the park to evict them, because the tenants themselves had unclean hands based on their failure to make full payment of their rent. *Id.* at 1042.

CDFLP extrapolates from our holdings in *Wine* that it is entitled to $9,167.67 in damages for each month S & V remained on the premises after the original lease's expiration, because S & V essentially "accepted" the terms of the November 15, 2004 letter when it stayed on the premises. CDFLP overstates the holding of *Wine*. Nowhere does that case analyze the amount of damages to which the park was entitled upon eviction of the tenants. In fact, *Wine* was before us on the counterclaims of the tenants, not on the park's eviction action. Thus, the question of the amount of damages to which the park would be entitled upon eviction of the tenants was not analyzed or even mentioned in the opinion.

■ Instead, it has been held repeatedly, "The measure of damages when a tenant unlawfully holds over, and no special damages are alleged, ... is the rental value of the premises during the time the same are so detained." *Hablich v. University Park Bldg. Co.*, 177 Ind. 193, 200, 97 N.E. 539, 543 (1912). *See also Lautmann v. Miller*, 158 Ind. 382, 387, 63 N.E. 761, 763 (1902) (stating that the landlord's only remedy where tenant held over after lease's expiration was the property's "fair rental value"); *Wallace v. Rogier*, 182 Ind. App. 303, 306, 395 N.E.2d 297, 300 (1979) ("In the case of loss of use of land, the rental value is the appropriate measure of damages"); *Strasser v. Powell*, 131 Ind. App. 508, 513, 172 N.E.2d 439, 441 (1961) ("In an action for ejectment, the law is that the measure of plaintiff's damages is

February 1, 2005. *See Beineke,* 868 N.E.2d at 537.

the value of the use and occupancy of the real estate."); *Gilbert v. Lusk,* 123 Ind. App. 167, 188, 106 N.E.2d 404, 415 (1952) (same); *Vandalia R.R. Co. v. Topping,* 72 Ind.App. 694, 698, 126 N.E. 485, 486 (1920) (same).

To the extent CDFLP claims S & V essentially accepted and was bound by the monthly rental terms of the November 15, 2004 letter when it remained on the premises after the expiration of the original lease, despite S & V's failure to respond to that letter, the *Lautmann* case clearly holds to the contrary. There, before the expiration of a lease, the landlord wrote a letter to the tenant advising that the tenant could remain on the property at a monthly rent of $150. The tenant never responded to this letter. The landlord successfully evicted the tenant, and on appeal the tenant attempted to argue that the jury should have been instructed that the letter created a new rental contract at $150 per month, despite the tenant's failure to respond to the letter. Our supreme court flatly stated, "This is not the law." *Lautmann,* 158 Ind. at 386, 63 N.E. at 763. The court went on to hold, "The *only* damages recoverable by the [landlord] were the fair rental value of the property...." *Id.* at 387, 63 N.E. at 763 (emphasis added).

Similarly, in *Hablich,* a landlord and tenant, who was paying $106 per month in rent, were unable to reach an agreement to renew the lease after the landlord demanded an increase in rent to $200 per month. The tenant nevertheless notified the landlord that he expected to remain on the premises after the expiration of the lease, and attempted to continue paying the previous rent of $106 per month. The landlord refused to accept these payments and successfully evicted the tenant. On appeal, our supreme court held that renewal of the lease depended upon the agreement of the landlord and tenant as to the rent amount; because there was no such agreement, there was no renewal of the lease. *Hablich,* 177 Ind. at 197, 97 N.E. at 541. The court also approved the introduction of evidence at trial that the landlord had offered to continue the lease at a rent of $200 per month; however, it also noted the trial court's admonishment to the jury that the amount of monthly rent demanded by the landlord and *not* agreed upon by the tenant was not to be considered in determining the rental value of the premises. *Id.* at 200, 97 N.E. at 542–43.

■ Despite CDFLP's attempts to distinguish or discredit *Lautmann* and *Hablich,* they apply directly to this case.[2] CDFLP's unilateral demand of an increase in rent to $9,167.67 per month, followed by S & V's failure to respond to that demand and its holding over after the original lease expired, did not constitute an agreement by S & V to pay that amount. Additionally, that amount is not the measure of damages to which CDFLP is entitled. Rather, as numerous cases have held, that measure is the fair market rental value of the premises after the expiration of the lease. That essentially is how the trial court calculated CDFLP's damages, and it was correct to do so.[3]

**2.** The fact that these cases are older, and may not contain as much detailed analysis as is found in modern opinions, does not invalidate their clear statements of law.

**3.** CDFLP did not argue in its opening brief that the trial court's calculation of fair market rental value for the premises was incorrect or an inappropriate determination for summary judgment. It does raise that possibility in its reply brief. However, an argument made for the first time in a reply brief is waived. *See Clark v. Hunter,* 861 N.E.2d 1202, 1211 n. 4 (Ind.Ct.App.2007); *see also* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief.").

CDFLP argues in the alternative that if it is not entitled to rent of $9,167.67 for each month of S & V's holdover, then it is entitled to treble damages, or three times the fair market rental value of the premises, pursuant to Indiana Code Section 34-24-3-1. That statute allows a victim of certain criminal offenses, including criminal trespass,[4] to recover up to treble damages from the offender. Putting aside the fact that CDFLP's original and amended complaints failed to make any mention of criminal trespass and treble damages, its argument on this point is unavailing.

CDFLP's argument appears to be based on the fact that some cases state, "When a lessee under a lease for a definite term holds over after the expiration of that term, the lessor has the option of treating the lessee as a tenant or a trespasser." *Houston v. Booher*, 647 N.E.2d 16, 19 (Ind. Ct.App.1995). More specifically, the tenant is considered a "trespasser" if the landlord seeks to evict the tenant after expiration of the original lease, rather than continuing to accept rental payments from the tenant. *See id.* Referring to a tenant remaining on the premises without permission of the landlord as a "trespasser" does not, however, indicate that the tenant is guilty of *criminal* trespass.

On that point, our supreme court has held unequivocally to the contrary. In discussing a prosecution brought under the predecessor to the current criminal trespass statute, the court held:

The statute of the criminal law upon which this prosecution is based was not intended to be used as an aid to gain possession of real estate or in ousting an occupant thereof who gained such occupancy lawfully, and who thereafter held over his rightful term without right. It is the well-settled law in this state, and

of many other states, that it is an abuse of the penal statute relating to criminal trespass to use it to try disputed rights in real property.

*Steele v. State*, 191 Ind. 350, 353, 132 N.E. 739, 739-40 (1921). We could hardly ask for a clearer statement of the law. S & V gained occupancy of the premises lawfully, but then admittedly remained on the premises without right. Although CDFLP was entitled to evict S & V from the property as a "trespasser," it cannot label S & V's conduct as "criminal," pursuant to *Steele*'s holding. There was no criminal trespass in this case, and CDFLP therefore cannot seek treble damages under Indiana Code Section 34-24-3-1. In sum, CDFLP has not demonstrated that the trial court erred in its calculation of damages.

### II. Attorney Fees

Next, CDFLP challenges the trial court's award of attorney fees to S & V under Indiana Code Section 34-52-1-1(b), which states:

In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

S & V alleged, and the trial court found, that count II of CDFLP's complaint, tying CDFLP's damages to the $6,000 monthly rent found in the All Glass lease, was frivolous or groundless.

Because the statute lists the grounds for awarding attorney fees in the

4. Ind.Code § 35-43-2-2.

disjunctive, a litigant is required to demonstrate the existence of only one in order to justify an award of attorney fees. *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 25 (Ind.Ct. App.2000), *trans. denied.* We will focus on whether count II of CDFLP's complaint was groundless when it was filed. A claim is groundless for purposes of Indiana Code Section 34–52–1–1(b) if no facts exist that support the legal claim relied upon and presented by the losing party. *Fisher v. Estate of Haley*, 695 N.E.2d 1022, 1029 (Ind.Ct.App.1998).

Here, the undisputed evidence as provided by Downey's own deposition testimony is that as of the middle of January 2005, it was clear that All Glass was not going to open a retail store in the space occupied by S & V because his daughter, Kelli, would not be available to manage it. Downey further admitted, "We were happy to get out of this lease, to be real honest with you." App. p. 146. Downey also advised his leasing agent to look for other tenants for the property as of February 1, 2005 because All Glass was not going to lease the property. Thus, the evidence irrefutably indicates that S & V's continued occupation of the premises after January 31, 2005 was not what prevented the All Glass lease from taking effect. It is clear that lease never was going to take effect, and that in fact Downey was relieved that it was not.

Nevertheless, despite Downey's knowledge to this effect, which undoubtedly can be imputed to CDFLP, CDFLP alleged in count II of its original complaint that it was losing the $6,000 in monthly rent provided by the All Glass lease because of S & V's continued occupancy of the premises. CDFLP alleges that it included the reference to the All Glass lease in its complaint only as one potential measure of damages,

not the sole measure. The fact remains, however, that for over a year, count II of the complaint provided the only possible measurement for CDFLP's damages. Count I of the complaint sought S & V's ejectment, not damages. CDFLP did not add counts III and IV to its complaint, providing alternative means for calculating damages, until *after* S & V had conducted extensive discovery regarding the All Glass lease, including several depositions, and filed its counterclaim alleging that count II of the complaint was frivolous and/or groundless.

It is readily apparent that count II's reliance on the All Glass lease to measure CDFLP's damages was not supported by any facts when CDFLP filed its complaint on March 15, 2005. CDFLP then waited over a year and stood by while S & V conducted extensive discovery and determined that the All Glass lease was illusory. This is precisely the type of situation that calls for an award of attorney fees based on having to defend against a claim that was groundless at its inception. The trial court did not err in awarding attorney fees to S & V under Indiana Code Section 34–52–1–1(b).[5]

### Conclusion

The trial court properly used the fair market rental value of the property S & V occupied to determine CDFLP's damages, and it properly awarded attorney fees to S & V. We affirm.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.

---

**5.** CDFLP does not argue that the trial court incorrectly calculated the amount of S & V's reasonable attorney fees.